UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

Interstate Power Systems, Inc.,                                  FILE NO. _____

             Plaintiff

vs.                                                              COMPLAINT

General Electric Company,
d/b/a GE Energy,                                                 JURY TRIAL DEMANDED

             Defendant

_____


     Plaintiff Interstate Power Systems, Inc., ("IPS") for its Complaint against Defendant

General Electric Company d/b/a GE Energy ("GE"), states and alleges as follows:


INTRODUCTION

     IPS brings this action for violations of the Minnesota Heavy and Utility Equipment

Manufacturers and Dealers Act ("HUEMDA"), Minn. Stat. §325E.068, et seq. and the Robinson-

Patman Act for antitrust violations with respect to product and parts pricing.  IPS has been a

distributor for Waukesha engines utilized in larger compressors and generators in a variety of

industrial and utility applications since at least 1989.   IPS has been a successful and profitable

distributor for Waukesha products, replacement parts and service.

     IPS is a privately held Minnesota company that has been operating in Minnesota since

1957.  It operates in the industrial distribution business and partners with various manufacturers

who sell products in a variety of industrial, utility and trucking applications.  IPS began

representing Waukesha in 1989, with significant expansions at the request of Waukesha in 1994

and 1999, and now includes work on Waukesha products for customers throughout much of the

north central United States.   IPS has been a valued part of the Waukesha distribution system,

consistently been profitable, and maintained good or excellent market penetration of Waukesha products and service in its area.  In 2010 IPS had its best year ever in sales and service of Waukesha products.

Less than 8 months later, on August 10, 2011, Waukesha representatives personally appeared at the offices of IPS in Bloomington, MN and delivered a letter terminating the Waukesha distributorship.  The letter contains no allegations of good cause for termination and in fact states no basis for the termination.   That is because no good cause exists, as IPS has long had a reputation for strong sales and service support for Waukesha customers.

IPS has invested substantial resources in promoting and building its Waukesha business over the last 22 years.  In this lawsuit, IPS seeks to enjoin the purported termination, to retain its distribution rights, and/or to seek damages as permitted by law.

## THE PARTIES

1.      IPS is a Minnesota corporation with its principle place of business in Bloomington, MN.  IPS has been in the industrial distribution business since 1957 and has been a Waukesha distributor since 1989.

2.      GE is a New York corporation with its principal place of business in Connecticut. Its operating division GE Energy is headquartered in Atlanta, GA.  In February of 2011 GE purchased Dresser Industries, Inc. which was then the manufacturer of Waukesha products.  GE is now the manufacturer of Waukesha products.

## JURSIDCTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §1332, as there exists diversity of citizenship between the parties and the amount in

controversy exceeds $75,000, exclusive of interest and costs.  This Court also has jurisdiction under 15 U.S.C. §15(a) and Minn. Stat. §325E.0684.

4.      Venue properly lies in the District of Minnesota pursuant to 28 U.S.C. §1391(a)(1) and (2)  and (c), as a substantial part of the events giving rise to IPS' claims occurred therein, and GE resides in this District for venue purposes as it is subject to personal jurisdiction in Minnesota.  Venue also properly lies in the District of Minnesota under 15 U.S.C. §15(a).

## BACKGROUND FACTS

**A.      A Long Term Mutually Beneficial Relationship**

5.      Waukesha Motor Company began doing business in 1906 in Waukesha, Wisconsin, building industrial and utility engines for use in a variety of applications including compressors and generators.  In 1974 Dresser Industries, Inc. purchased Waukesha.  Except for a brief time as a subsidiary of Halliburton, Inc., Dresser continued to operate the Waukesha business until February 1, 2011 when GE purchased Dresser, Inc.  GE is now the manufacturer of Waukesha products.

6.      IPS was first appointed as a Waukesha distributor in 1989 with a fairly limited territory and total sales well under $1 million a year.   In 1995 Waukesha approached IPS and indicated that it had terminated the Cummins dealer in Minneapolis and wanted IPS to take over a larger territory headquartered in Minneapolis.  IPS agreed to do that and since 1995 the IPS Waukesha distributorship business has been officially located in its Bloomington, MN headquarters.  In 1999 Waukesha added additional territory to the IPS Waukesha business.  Since that time IPS has continued to grow its Waukesha business in both dollar volume and the breadth of its customer base which now includes customers all over the north central United States.

7.     The general nature of the Waukesha business is that large companies generally purchase Waukesha engines for use in various industrial and utility applications.  Two of those primary applications are generators and industrial compressors.  Some of these sales are initiated by distributors, some occur directly through the manufacturer, and some occur through "packagers" who combine various components into industrial applications.  Once in place in the field, however, all of the ongoing parts and service business is the responsibility of the local Waukesha distributor.

8.     Over the past 22 years, IPS has continually invested in its Waukesha distribution business, by carrying significant inventory, having dedicated sales people devoted to Waukesha products, having dedicated trained service people to service Waukesha products, and investing in buildings throughout the IPS system to handle Waukesha products, parts and inventory.  This investment has been in the millions of dollars.  IPS' total sales of Waukesha products, parts and service has grown from just over $1 million in 1999 to a record $4 million in 2010.  At the time that Waukesha's termination notice was received, IPS was on track to exceed the results of 2010 in 2011.

9.     In 2010 Waukesha acknowledged the superior work done by IPS and provided it was a commendation plaque, a copy of which is attached as Exhibit A.

B.     **The Waukesha Distribution System**

10.     Although there were occasional changes in the system, the Waukesha distribution system has generally included approximately 10 distributors who covered the entire continental United States.  In 2010 there were eight Waukesha distributors who covered the continental United States including IPS in Minnesota and others in Maryland, Massachusetts, Louisiana,

Colorado, Texas, California and the state of Washington.  From these eight locations, Waukesha products and service were handled nationally.

11.     The Waukesha relationship with its distributors has been generally conducted through a uniform Distribution, Service and Commission Agreement ("Waukesha Agreement") provided to Waukesha distributors on a non-negotiable basis.

12.     The Waukesha Agreement requires the Distributor to invest substantial sums of money to, among other things, (a) maintain an inventory of replacement parts with facilities subject to the approval of Waukesha; (b) maintain suitable service facilities; (c) employ a sufficient number of competent service personnel; (d) spend its own money training its employees; and (e) refrain from selling any competing products.

13.     The Waukesha Agreement provides the distributor with the right to sell products earning significant commissions and to sell replacement parts through significant price discounts. In addition the distributor is free to charge market rates for labor utilized in the sale or replacement of Waukesha products or parts.

14.     The last Waukesha Agreement was signed in December of 2006 and ran for a three year period.  A copy of that Waukesha Agreement is attached hereto as Exhibit B (with pricing discounts redacted).

**C.     The Transition To GE**

15.     In late 2009 Dresser advised that it was exploring structural changes to its business including a potential sale, and advised its Waukesha distributors that it would not issue updated agreements at that time, but that the business relationship would continue.

16.     On July 20, 2010, Dresser issued a notice to its distributors that it was not going to issue updated agreements but that the parties would continue to operate under the old

Waukesha Agreement "as if the prior contract had not expired."  A copy of that notice is attached as Exhibit C.

17.     On or about October 6, 2010 Dresser announced that GE had agreed to purchase Dresser, Inc. in a $3 billion deal.

18.     On February 1, 2011 GE closed on the transaction and assumed control of Dresser, Inc., the Waukesha business and the Waukesha distribution system that had been in place for decades.

**D.     The Unlawful Termination**

19.     On July 10, 2011 Patricia M. Bianco, Global Channel Director, GE Gas Engines GE personally delivered to IPS in Bloomington, MN a termination letter terminating IPS' Waukesha distributorship.  A copy of the letter is attached as Exhibit D ("Termination Letter").

20.     The termination letter purports to take the following actions:

   a.  Terminate the distributorship as of midnight on November 10, 2011.

   b.  Effectively immediately (August 10, 2011), Waukesha appointed a second distributor in Interstate's territory.

   c.  Effective immediately (August 10, 2011), Waukesha eliminated all discounts under the distribution agreement forcing IPS to buy from Waukesha at retail prices.

   d.  Effectively immediately (August 10, 2011), Waukesha will honor only emergency and specific customer orders.  No stock orders will be accepted.

21.     The Termination Letter identifies no good cause for termination and identifies no shortcomings at all in the IPS Waukesha distribution operation.

22.     Within a matter of days, Waukesha announced that it would have only two North American distributors, Gas Drive who would control all of Canada and the northern part of the United States, and Waukesha-Pierce Industries (WPI) who would control the southern tier of the United States and New England.   Both Gas Drive and WPI had been Waukesha distributors prior to the GE acquisition serving in a similar status to IPS in different parts of the country. Waukesha in effect picked two distributors among the eight existing distributors and awarded them additional territory and the opportunity to benefit from the years of market penetration achieved by the various distributors, all without any compensation to the affected distributors.

**E.     The Impact on IPS**

23.     A Waukesha distributor's success is driven by its ability to both (a) maintain an adequate inventory of parts sufficient to be able to handle customer demand, particularly demand that arises as a result of an emergency; and (b) an adequately trained staff able to repair Waukesha products and restore them to an operational status on a 24/7/365 basis.

24.     IPS has spent over 50 years building its reputation as a reliable and competent supplier of parts and service in its territory.   Operational reliability and prompt service is critical to the success of a Waukesha distributor.   IPS has invested over 22 years in building a reputation for quality service for Waukesha products.

25.     During those 22 years, IPS has been a valued and important distributor in Waukesha's distribution system.   IPS has significantly grown its Waukesha business such that the current business volume if over 4 times what it was in 1989.   IPS' total sales of Waukesha products, parts and service has grown from just over $1 million in 1999 to a record $4 million in 2010.   At the time that Waukesha's termination notice was received, IPS was on track to exceed the results of 2010 in 2011.

26.     In addition, prospects for future growth have never been better, given the growth of energy development work and the need for large back-up power generators within the IPS territory.

27.     Waukesha products are long lasting products.  These large generators and compressors are designed for rugged industrial use and if properly maintained remain in operation for twenty to thirty years or longer.  Thus the value in the Waukesha distributor business is both in seeing sales of new units go into the field, but also in maintaining long term customer relationships for parts and service.  Customers generally prefer to utilize genuine replacement parts as opposed to other gray market parts and to utilize authorized Waukesha distributors for repair labor because of their extensive training in Waukesha products.  IPS has been building that satisfied customer base for the last 22 years.

28.     Termination of the distributor relationship at this time will deny IPS the fruits of 22 years of hard work in building up customer support and loyalty, the loss of future business on established Waukesha units already in the field, and the anticipated expansion projected for the next decade or more.  There is no readily apparent alternative to replace IPS' Waukesha distribution business.  In addition to a very limited number of competitors, IPS has devoted itself to the Waukesha market, and by contract been precluded from selling any competing products. Thus it has no alternative product source which can replace this business.

**COUNT ONE**
**WRONGFUL TERMINATION**
**(INJUNCTIVE RELIEF)**

29.     Plaintiff realleges and reaffirms all of the facts, matters and things alleged in Paragraphs 1 through 28 above as if the same were set forth herein.

30.     GE is a heavy and utility equipment manufacturer as that term is defined in Minn. Stat. §325E.068, subd. 3.

31.     IPS is a heavy and utility equipment dealer as that term is defined in Minn. Stat. §325E.068, subd. 4. (hereafter Distributor or Dealer can be used interchangeably.)

32.     Minn. Stat. §325E.0681, subd. 1, requires good cause before GE can terminate IPS' Waukesha dealership.

33.     GE's termination letter contains no reasons constituting good cause to terminate the Waukesha Agreement and does not provide that the dealer has until the expiration of the notice period in which to cure a claimed deficiency, all in violation of Minn. Stat. 325E.0681, subd. 2.

34.     GE does not have good cause to terminate the Waukesha Agreement, and accordingly, the termination was in violation of Minn. Stat. 325E.0681, subd. 1.

35.     As a result of GE's unlawful termination, IPS has suffered irreparable harm to its goodwill, its customer relationships and its business opportunities selling Waukesha products.

36.     Under Minn. Stat. §325E.0684, IPS is entitled to temporary and permanent injunctive relief barring Waukesha from terminating the dealership agreement without good cause.

### COUNT TWO
### WRONGFUL TERMINATION (DAMAGES)
### (IN THE ALTERNATIVE TO COUNT ONE)

37.     Plaintiff realleges and reaffirms all of the facts, matters and things alleged in Paragraphs 1 through 36 above as if the same were set forth herein.

38.     GE is a heavy and utility equipment manufacturer as that term is defined in Minn. Stat. §325E.068, subd. 3.

39.     IPS is a heavy and utility equipment dealer as that term is defined in Minn. Stat. §325E.068, subd. 4.

40.     Minn. Stat. §325E.0681, subd. 1, requires good cause before GE can terminate IPS' Waukesha Agreement.

41.     GE's termination letter contains no reasons constituting good cause to terminate the Waukesha Agreement and does not provide that the dealer has until the expiration of the notice period in which to cure a claimed deficiency, all in violation of Minn. Stat. 325E.0681, subd. 2.

42.     GE does not have good cause to terminate the dealership agreement, and accordingly, the termination was in violation of Minn. Stat. 325E.0681, subd. 1.

43.     As a result of GE's unlawful termination, IPS has suffered harm to its goodwill, its customer relationships, its business opportunities, lost profits on the present and future sale of Waukesha products for years if not decades, parts and labor and such other damages as may be proven at trial, all in an amount in excess of $5 million.

## COUNT THREE
## WRONGFUL CHANGE IN COMPETITIVE CIRCUMSTANCES
## (INUNCTIVE RELIEF)

44.     Plaintiff realleges and reaffirms all of the facts, matters and things alleged in Paragraphs 1 through 43 above as if the same were set forth herein.

45.     GE is a heavy and utility equipment manufacturer as that term is defined in Minn. Stat. §325E.068, subd. 3.

46.     IPS is a heavy and utility equipment dealer as that term is defined in Minn. Stat. §325E.068, subd. 4.

47.     Minn. Stat. §325E.0681, subd. 1 prohibits a manufacturer from substantially changing the competitive circumstances of the dealership agreement without good cause.

48.     In its termination letter, GE indicated that it intended to appoint another distributor in IPS' existing territory and in fact has done so with the appointment of Gas Drive in IPS' territory.

49.     Such appointment of another distributor in the existing IPS territory is a substantial change in the competitive circumstances of the dealership agreement that was done without good cause and in violation of Minn. Stat. §325E.0681, subd. 1.

50.     As a direct result of such unlawful actions, IPS has suffered irreparable harm in its business goodwill, its relationships with customers, and its business opportunities selling Waukesha products.

51.     Under Minn. Stat. §325E.0684, IPS is entitled to temporary and permanent injunctive relief barring Waukesha from changing the competitive circumstances of the dealership agreement without good cause.

**COUNT FOUR**
**WRONGFUL CHANGE IN COMPETITIVE CIRCUMSTANCES**
**(DAMAGES)**
**(IN THE ALTERNATIVE TO COUNT THREE)**

52.     Plaintiff realleges and reaffirms all of the facts, matters and things alleged in Paragraphs 1 through 47 above as if the same were set forth herein.

53.     GE is a heavy and utility equipment manufacturer as that term is defined in Minn. Stat. §325E.068, subd. 3.

54.     IPS is a heavy and utility equipment dealer as that term is defined in Minn. Stat. §325E.068, subd. 4.

55.     Minn. Stat. §325E.0681, subd. 1 prohibits a manufacturer from substantially changing the competitive circumstances of the dealership agreement without good cause.

56.     In its termination letter, GE indicated that it intended to appoint another distributor in IPS' existing territory and in fact has done so with the appointment of Gas Drive in IPS' territory.

57.     Such appointment of another distributor in the existing IPS territory is a substantial change in the competitive circumstances of the dealership agreement that was done without good cause and in violation of Minn. Stat. §325E.0681, subd. 1.

58.     As a direct result of such unlawful actions, IPS has suffered harm in its business goodwill, its customer relationships, its business opportunities, lost profits on the present and future sale of Waukesha products for years if not decades, parts and labor and such other damages as may be proven at trial, all in an amount in excess of $5 million.

**COUNT FIVE**
**WRONGFUL PRICE DISCRIMINATION**
**(INJUNCTIVE RELIEF)**

59.     Plaintiff realleges and reaffirms all of the facts, matters and things alleged in Paragraphs 1 through 58 above as if the same were set forth herein.

60.     GE is a heavy and utility equipment manufacturer as that term is defined in Minn. Stat. §325E.068, subd. 3.

61.     IPS is a heavy and utility equipment dealer as that term is defined in Minn. Stat. §325E.068, subd. 4.

62.     Minn. Stat. §325E.0682 (b)(3) makes it unlawful for a manufacturer to discriminate in the prices charged for equipment of like grade and quality sold by the equipment manufacturer to similarly situated equipment dealers.

63.     By cancelling all of IPS' product and parts discounts effective immediately on August 10, 2011, GE has unlawfully discriminated in the prices charged for equipment of like grade and quality sold by the equipment manufacturer to similarly situated equipment dealers as GE has upon information and belief, continued to sell to WPI and Gas Drive at standard or substantial distributor discounts.

64.     As a result of GE's unlawful pricing actions, IPS has suffered damages including irreparable harm to its ability to provide competitive pricing to its customers and still make a profit, irreparable harm to its customer relationships, irreparable harm in its business goodwill, and its business opportunities selling Waukesha products.

65.     Under Minn. Stat. §325E.0684, IPS is entitled to temporary and permanent injunctive relief barring Waukesha from discriminating in the prices charged to similarly distributors.

## COUNT SIX
## WRONGFUL PRICE DISCRIMINATION
## (DAMAGES)
## (IN THE ALTERNATIVE TO COUNT FIVE)

66.     Plaintiff realleges and reaffirms all of the facts, matters and things alleged in Paragraphs 1 through 65 above as if the same were set forth herein.

67.     GE is a heavy and utility equipment manufacturer as that term is defined in Minn. Stat. §325E.068, subd. 3.

68.     IPS is a heavy and utility equipment dealer as that term is defined in Minn. Stat. §325E.068, subd. 4.

69.     Minn. Stat. §325E.0682 (b)(3) makes it unlawful for a manufacturer to discriminate in the prices charged for equipment of like grade and quality sold by the equipment manufacturer to similarly situated equipment dealers.

13

70.     By cancelling all of IPS' product and parts discounts effective immediately on August 10, 2011, GE has unlawfully discriminated in the prices charged for equipment of like grade and quality sold by the equipment manufacturer to similarly situated equipment dealers as GE has continued to sell to WPI and Gas Drive at standard distributor discounts.

71.     As a result of GE's unlawful pricing actions, IPS has suffered damages including lost profits on parts sales, and other damages that may be proven at trial.

**COUNT SEVEN**
**PRICE DISCRIMINATION UNDER ROBINSON PATMAN ACT**

72.     Plaintiff realleges and reaffirms all of the facts, matters and things alleged in Paragraphs 1 through 71 above as if the same were set forth herein.

73.     In its Termination Letter, GE immediately terminated IPS' ability to buy parts at distributorship pricing, even during the alleged 93 day wind up of the distributorship.  As a result Gas Drive can purchase products and parts at more favorable pricing than IPS for sale to the same customers.

74.     In refusing to sell products and parts to IPS at anything other than list price, GE is unlawfully discriminating in price between different purchasers of commodities of like grade and quality, the sales are involved in interstate commerce, and the products and parts are sold for use, consumption or resale with the United States.

75.     Such actions by GE with respect to pricing has the effect to substantially lessen competition or tends to create a monopoly in the sale of Waukesha parts, or injures, destroys or prevents competition between Waukesha distributors or their customers.

76.     Such unlawful anticompetitive actions by GE should be enjoined by this Court and IPS should be awarded its damages as may be proven at trial, trebled as permitted by 15 U.S.C. §15(a).

## COUNT EIGHT
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

77.     Plaintiff realleges and reaffirms all of the facts, matters and things alleged in Paragraphs 1 through 76 above as if the same were set forth herein.

78.     The dealer agreement with Waukesha requires, among other things, that IPS devote sufficient capital to and maintain sufficient facilities for operation of its distributor operations.  It requires IPS to maintain adequate inventories of Waukesha parts and trained personnel to respond to customer needs on a 24/7/365 basis.  It also requires that IPS maintain adequate working capital to perform all of its obligations under the Dealer agreement.  Finally, it requires that IPS refrain from selling any competing products which makes IPS reliant on Waukesha for the continued success of its industrial and utility business in the product areas served by Waukesha.

79.     The Waukesha Agreement includes a covenant of good faith and fair dealing by Waukesha that it will refrain from any action which prevents IPS from performing its commitments under the Waukesha Agreement or which deprives IPS of a reasonable opportunity to profit from the operation of its Waukesha distributorship at the contractually-specified locations.

80.     By its conduct in purporting to terminate the Waukesha Agreement and appointing another distributor within IPS' territory, GE has breached and/or anticipatorily breached the implied covenant of good faith contained in the Waukesha Agreement between the parties.

81.     Pursuant to Minn. Stat. §555.02 and the common law, IPS is entitled to an order and judgment of this Court, declaring GE to be in breach of contract, enjoining any continuing or

further breach of contract and awarding IPS any and all damages it suffers to the time of trial by reason of GE's breach of contract.

## COUNT NINE
## ATTORNEYS FEES

82.     Plaintiff realleges and reaffirms all of the facts, matters and things alleged in Paragraphs 1 through 81 above as if the same were set forth herein.

83.     Under both the provisions of Minn. Stat. §325E.0684 and 15 U.S.C. §15(a), IPS is entitled to the recovery of its attorney's fees and costs in this action.

84.     This Court should award IPS its reasonable attorney's fees and costs as may be submitted to the Court at the appropriate time in the proceeding.

WHEREFORE, Plaintiff Interstate Power Systems, Inc. prays for an Order of this Court as follows:

1.  As to Count One of the Complaint, temporarily and permanently enjoining GE from terminating the IPS Waukesha Distributorship without a demonstration of good cause and awarding IPS whatever other damages may be proven at trial.

2.  In the alternative, under Count Two of the Complaint, awarding IPS damages in an amount in excess of $5 million for its unlawful termination of the IPS Waukesha distributorship.

3.  As to Count Three of the Complaint, temporarily and permanently enjoining GE from changing the competitive circumstances of the IPS Waukesha Distributorship without a demonstration of good cause and awarding IPS whatever other damages may be ; 15proven at trial.

4. In the alternative, under Count Four of the Complaint, awarding IPS damages in an amount in excess of $5 million for GE's unlawful change in circumstances of the IPS Waukesha distributorship without good cause.

5. As to Count Five of the Complaint, temporarily and permanently enjoining GE from discriminating in the prices charged for products and parts of like grade and quality sold by GE to similarly situated Waukesha distributors and awarding IPS whatever other damages may be proven at trial.

6. In the alternative, under Count Six of the Complaint, awarding IPS damages in an amount to be determined at trial for GE's unlawful price discrimination under HUEMDA.

7. As to Count Seven of the Complaint, temporarily and permanently enjoining GE from discriminating in the prices charged for products and parts of like grade and quality sold by GE to similarly situated Waukesha distributors as proscribed by the Robinson-Patman Act and awarding IPS whatever other damages may be proven at trial.  In the alternative, awarding IPS damages in an amount to be determined at trial for GE's unlawful price discrimination, including treble damages.

8. As to Count Eight of the Complaint, temporarily and permanently enjoining GE from further breaches of the Waukesha Agreement including termination of the same without a demonstration of good cause and awarding IPS whatever other damages may be proven at trial.

9. As to Count Nine of the Complaint, for all of IPS' attorney's fees and costs.

10. For such other and further relief as may be determined by the Court.

17

Dated:   September 6, 2011                  Hessian & McKasy, P.A.


                                            By s/ Lee A. Henderson
                                                Lee A. Henderson (#126305)
                                            4000 Campbell Mithun Tower
                                            222 South Ninth Street
                                            Minneapolis, MN 55402
                                            (612) 746-5750

                                            ATTORNEYS FOR PLAINTIFF
                                            INTERSTATE POWER SYSTEMS, INC.