# Exhibit A



Dresser Waukesha and its Distributors share a mutual commitment to provide customers with continually innovative engine solutions of the highest quality coupled with unequaled service and support.

# Interstate Power Systems

Meets or exceeds the qualifications required to sell and service Dresser Waukesha Products as an Authorized Dresser Waukesha Distributor.









# Exhibit B

# DISTRIBUTION,

# SERVICE

# AND COMMISSION

# AGREEMENT



# INDEX

| ARTICLE | DESCRIPTION | PAGE |
|---|---|---|
| | DISTRIBUTOR MANAGEMENT AND OWNERSHIP STATEMENT.......ii | |
| I | APPOINTMENT .................................................................................... 2 | |
| II | OPERATION OF DISTRIBUTOR........................................................... 4 | |
| III | COMMISSIONS ................................................................................... 6 | |
| IV | PROMOTIONAL ASSISTANCE AND TRADE SHOWS................................................................................................... 8 | |
| V | ANNUAL SURPLUS INVENTORY RETURN .......................................... 8 | |
| VI | RETURN OF PARTS REMOVED BY DISTRIBUTOR FROM NEW ENGINES OR UNITS ........................................................ 8 | |
| VII | WARRANTY TERMS ............................................................................. 9 | |
| VIII | INSTRUCTION, STARTUP AND WARRANTY SERVICE............................................................................................... 10 | |
| IX | RECORDS AND REPORTS.................................................................. 11 | |
| X | TRADE NAMES, TRADEMARKS AND CONFIDENTIALITY ................ 11 | |
| XI | FORCE MAJEURE AND LIMIT OF LIABILITY...................................... 12 | |
| XII | TERM AND TERMINATION.................................................................. 13 | |
| XIII | COMPLIANCE WITH LAWS AND BUSINESS CONDUCT .................. 15 | |
| XIV | MISCELLANEOUS........ ……....................................................………17 | |

## EXHIBITS

| A | WAUKESHA PRODUCTS.……………………………………………….20 |
|---|---|
| B | TERRITORY.……………………………………………………………….21 |
| C | APPROVED LOCATIONS.…………………………………………………22 |
| D | DISCOUNTS.………………………………………………………………23 |
| E | GENERAL TERMS OF SALE.……………………………………………24 |
| F | COMMISSIONS.……………………………………………………………30 |
| G | CODE OF CONDUCT.……………………………………………………31 |

i

## DISTRIBUTOR MANAGEMENT AND OWNERSHIP STATEMENT

THIS STATEMENT ("Statement") is hereby made a part of a Distribution, Service and Commission Agreement dated the 15th day of December, 20 06 between Waukesha Engine, Dresser, Inc., (hereinafter called "Waukesha") and Interstate Power Systems herein and hereinafter called "Distributor."

Distributor hereby represents that as of the date of the Distribution, Service and Commission Agreement the following is complete, accurate and omits no material information:

MANAGEMENT OF DISTRIBUTOR
1. Distributor represents to Waukesha that the management of Distributor as of this date is as follows:

| Name | Address | Title |
|------|---------|-------|
| JEFF CASWELL | 2601 AMERICAN BLVD, MPLS, MN 55425 | CEO |
| TRAVIS PENROD | 2501 AMERICAN BLVD. MPLS, MN 55425 | PRESIDENT |
| | | |
| | | |

OWNERSHIP OF DISTRIBUTION
2. Distributor hereby represents to Waukesha that the ownership of Distributorship as of this date is as follows:
   (a)  If Distributor is an individual, partnership, or individual or partnership trading under a trade name;

| Name | Address | Percent of Ownership |
|------|---------|---------------------|
| GORDON GALARNEAU | 2601 AMERICAN BLVD MPLS MN 55425 | 100% |
| | | |
| | | |

ii

(b)   If Distributor is a corporation or limited liability company;

Name                         No. of Shares (All Classes)

INTERSTATE POWER SYSTEMS, INC.                    1,000

Total Shares issued and outstanding (All classes)  1,000

IN WITNESS WHEREOF, Distributor has executed this Statement with knowledge that Waukesha will materially rely thereupon as of the __18th__ day of __April_____, 2007.

Interstate Power Systems
(Distributor)

BY_____

BY_____

(Signature should be the same persons as those signing the Distribution, Service and Commission Agreement for Distributor referred to hereinbefore.)

## DISTRIBUTION, SERVICE AND COMMISSION
## AGREEMENT

THIS AGREEMENT ("Agreement") is effective as of the 15th day of December, 2006 between Waukesha Engine, Dresser, Inc., a Delaware, U. S. A. corporation having its principal place of business in Dallas, Texas (hereinafter called ("**WAUKESHA**" ) and Interstate Power Systems, a company with offices at 2501 American Blvd. East, Minneapolis, MN  55425 (hereinafter called "Distributor").

WHEREAS, **WAUKESHA** and it subsidiaries manufacture and market internal combustion engines, power units, Enginator® products and other products ("Waukesha Products" as specifically listed in Exhibit A hereto from time to time), and desires to further the sale and service of Waukesha Products; and

WHEREAS, Waukesha Products have a long history of high quality performance and customer acceptance and satisfaction; and

WHEREAS, **WAUKESHA** has determined that the continued successful marketing and servicing of Waukesha Products, and the continued successful response to the needs of users of Waukesha Products requires a distribution system of integrated authorized distributors, each having a geographically defined area of responsibility ("Territory" as specifically listed in Exhibit B hereto from time to time), and each having an ability to respond (in a manner satisfactory to **WAUKESHA**) to the needs of all potential buyers for Waukesha Products; and

WHEREAS, **WAUKESHA** and Distributor want to ensure the stability and integrity of such integrated system of distributors, and to ensure that the basic response requirements for customer needs are met by each distributor; and

WHEREAS, Distributor desires to become a distributor of Waukesha Products in the Territory assigned to it hereafter; and

WHEREAS, Distributor understands the needs and requirements of **WAUKESHA**, and the rights, obligations, and restrictions of the **WAUKESHA** system of distribution of Waukesha Products; and

WHEREAS, Distributor accepts such rights, restrictions and obligations in order to obtain the benefits associated with the right to distribute Waukesha Products;

NOW, THEREFORE, the parties mutually agree as follows:

**ARTICLE I        APPOINTMENT**

A.    **WAUKESHA,** subject to the terms, conditions, restrictions and obligations contained herein, hereby appoints Distributor as an authorized **WAUKESHA** distributor in the Territory, and grants the Distributor certain non-exclusive rights in its own name and for its own risk, expense and account to buy, market, sell and service Waukesha Products and appointment is conditioned upon Distributor's continuing operational compliance with the following:

1.  Distributor shall exercise its grant and appointment only from such locations or places of business as have been approved and authorized in writing by **WAUKESHA**.

2.  Unless expressly agreed otherwise in advance, in writing by **WAUKESHA**, Distributor shall obtain Waukesha Products for resale only from **WAUKESHA**.

3.  During the term of this Agreement, Distributor shall not manufacture or distribute goods that directly or indirectly compete with Waukesha Products, without **WAUKESHA**'s prior written approval.

4.  The parties recognize that **WAUKESHA** may sell Waukesha Products directly to an end purchaser in which case Distributor may act as sales representative for such sales. Distributor shall be paid a sales commission as agreed in writing in advance on a case-by-case basis on such direct sales which are actively worked on and solicited by Distributor. Any agreed commission paid shall be Distributor's sole compensation for providing such services and assuming such responsibilities.

    If requested, Distributor also shall provide the same instruction, start-up, warranty and other services and responsibilities on such direct sales as Distributor would be obligated to provide on Distributor sales of Waukesha Products under Article III of this Agreement.

5.  Distributor shall not operate, market or sell (directly or indirectly) Waukesha Products from any locations or places of business without prior written approval of **WAUKESHA**. Such grant of approval shall be in the sole discretion of **WAUKESHA**. Indirect operation, marketing and selling shall include, but not be limited to, the establishment or appointment of third-party sales agents, sales representatives, distributors, dealers or resellers outside the Territory. (Approved locations and places of business shall be only those set out in Exhibit C, which may be hereafter modified by **WAUKESHA** from time to time.)

B.    Distributor hereby accepts such appointment and shall use its best and principal efforts to promote solicit and make maximum sales of, and to provide service for, Waukesha Products in the Territory and other tasks and services as WAUKESHA may designate and agree in writing from time to time.

C.    Distributor shall strictly adhere to all the distribution policies of **WAUKESHA** as are set out in this Agreement, or in **WAUKESHA**'s standard policies and manuals from time to time, (including without limitation WAUKESHA's Distributor Policy Manual) or that are communicated from **WAUKESHA** to Distributor in writing from time to time and shall strictly adhere to all of the foregoing.

D.    The prices of Waukesha Products to Distributor shall at all times be set forth in **WAUKESHA**'s published price list from time to time in effect, less the discount provided in Exhibit D. The discounts in Exhibit D may be amended by **WAUKESHA**

from time to time upon written notice of such change to Distributor. Unless otherwise stated by **WAUKESHA** in writing, all prices shall be EXWORKS place of manufacture.

E.   Unless otherwise stated by **WAUKESHA** in writing or superseded by the express terms of this Agreement, terms and conditions of sale of Waukesha Products will be according to **WAUKESHA**'s GENERAL TERMS OF SALE in effect from time to time during this Agreement. **WAUKESHA**'s current GENERAL TERMS OF SALE are attached hereto as Exhibit E. Payment for Waukesha Products by Distributor to **WAUKESHA** shall be made by confirmed irrevocable letter of credit, established at time of ordering, with a bank acceptable to **WAUKESHA**. All payments shall be made in United States currency. However, **WAUKESHA** shall reserve the right to establish different payment terms on an order-by-order basis, as it deems necessary in its sole discretion. In accordance with the foregoing, **WAUKESHA** may require from Distributor and/or Distributor's end-use customer payment in advance; payment upon delivery; letters of credit; third-party guarantees; bonds; interest bearing promissory notes; assignment of contracts an/or contract rights, and/or other reasonable commercial arrangements. **WAUKESHA** reserves the right at all times to establish or amend such terms of payment until actual delivery of Waukesha Products to Distributor. It is specifically understood that **WAUKESHA**'s acceptance of a purchase order shall not terminate or waive this right regarding payment terms. No agreement or exception to the standard payment terms as may be made shall at any time be deemed as establishing a precedent.

F.   **WAUKESHA** shall have the right in its sole discretion to retain such security interests in Waukesha Products as it deems necessary to protect its property and interests. Distributor shall cooperate with **WAUKESHA** to the fullest extent necessary to effect and perfect such retention of security interests, and shall timely execute such documents as are required by **WAUKESHA** regarding same.

G.   Delivery of Waukesha Product by **WAUKESHA** to a carrier shall constitute delivery to Distributor. Title (except such title as may be retained by **WAUKESHA** as security for payment) and risk of loss shall pass to Distributor upon delivery to the carrier, regardless of whether shipments are designated freight collect, freight allowed, or prepaid and charged back. In applicable circumstances, Distributor shall establish and advise **WAUKESHA** of the proper insurance declaration values for Waukesha Products to be shipped under arrangements handled by **WAUKESHA**.

H.   **WAUKESHA** reserves the right at any time, and from time to time, to change, amend and delete Waukesha Products from this Agreement (including without limitation the right to exclude any and all Waukesha Products, in the event of discontinuance thereof), to change the Territory if **WAUKESHA**, at its sole discretion, has established that market conditions so justify, to change or amend prices of Waukesha Products, terms of sale, distribution policies, purchase discounts or territorial commissions, warranty policy and/or startup or warranty service and repair compensation formulas, by giving written notice of any such change to Distributor. The current warranty service compensation formula is set forth in the Distributor Policy Manual. Such changes shall become immediately effective upon receipt of such notice by Distributor, unless otherwise stated in such notice.

**ARTICLE II       OPERATION OF DISTRIBUTOR**

A.     As part of Distributor's promotional and sales efforts under this Agreement, Distributor shall encourage the establishment of a sufficient number of qualified retail dealers of Waukesha Products ("Dealers") in the Territory, and Distributor shall service such Dealers as are necessary to support same. Distributor shall also work toward the establishment of Distributor-designated original equipment manufacturers ("DOEM") in the Territory. The parties agree that the following shall apply for both Dealers and DOEMs.

1.  No Dealer or DOEM shall be selected, established or operate without the prior written approval of Waukesha.

2.  Distributor shall be responsible for ensuring that the appointment of Dealers and DOEMs complies with all applicable **WAUKESHA** policies and compliance of such Dealers with the general terms and conditions set out in the Agreement, and Distributor shall specifically be responsible for ensuring that its Dealers and DOEMs operate in a first-class manner and only out of approved locations and places of business.

B.     Distributor shall purchase and maintain within the Territory an inventory of Waukesha Products sufficient for the proper support of Waukesha Product sales in the Territory, and to meet Distributor's obligations hereunder, and Distributor shall maintain for this purpose clean, orderly and first-class storage and warehouse facilities which shall be subject to approval of **WAUKESHA**.

C.     Not later than thirty (30) days before Distributor's fiscal yearend, Distributor will provide a written business plan for sales of Waukesha Products for the next fiscal year. This report will be in a format and include detail satisfactory to WAUKESHA.

D.     Distributor shall at all times:

1.  Maintain suitable service facilities;

2.  Employ a sufficient number of competent service personnel; and

3.  Maintain a sufficient stock in number and assortment of service parts to satisfy the servicing, repair and maintenance requirements of customers of Waukesha Products in the Territory and to perform its startup, warranty service and policy repair responsibilities in respect of all Waukesha Products in the Territory.

E.     Distributor shall at all times maintain a minimum inventory of service parts in an amount not less than twenty-five percent (25%) of the total purchases of parts by Distributor from **WAUKESHA** in the preceding twelve (12) month period (as determined by the actual prices paid by Distributor to **WAUKESHA**).

F.     Distributor shall at all reasonable times during normal business hours permit the inventory and inspection by Waukesha sales and service personnel of Distributor's service facilities and of the inventory and stock of parts. Distributor shall provide trained and adequate personnel to assist **WAUKESHA** in such inspection and inventory.

G.     Distributor shall make its personnel available, at its own expense, at facilities designated by **WAUKESHA** for such sales and service training and instruction by **WAUKESHA** as **WAUKESHA** may deem necessary to ensure the proper sales and servicing of Waukesha Products.

H.     In the performance of Distributor's sales and service obligations within the Territory,

Distributor shall establish and maintain regular contact with purchasers, potential purchasers, and end-users of Waukesha Products that are located in the Territory. Distributor shall also be responsible for establishing and maintaining regular due and proper contact with all consultants and engineering firms (and other like agencies) located in the Territory that could maximize the competitiveness of and sales of Waukesha Products.

I.  Distributor shall report promptly to **WAUKESHA** any complaint received by Distributor relating to any Waukesha Product which Distributor cannot remedy, and shall promptly notify **WAUKESHA** of the commencement of any legal action or the threat of such action involving any Waukesha Product or the servicing of any Waukesha Product.

J.  Distributor shall employ and maintain a sufficient number of adequately trained and competent personnel of good character to carry out and perform properly and fully all of Distributor's obligations under this Agreement.  Distributor shall be solely responsible for and hold **WAUKESHA** harmless from any liability to Distributor's personnel or for the conduct of Distributor's personnel, and for any and all compensation, incentives, allowances and other amounts payable to Distributor's personnel.

K.  Distributor shall pay and hold **WAUKESHA** harmless from any liability for Distributor's expenses incurred in connection with its operations hereunder, including but not limited to, salaries and wages, office, shop, traveling, insurance, advertising, export clearance, and freight expenses, and any and all federal, state and local taxes and contributions.

L.  Distributor shall not: hold it out or act as an agent for **WAUKESHA**; sign or endorse **WAUKESHA**'s name on any commercial paper or contract or other instrument or make collection thereon; or expressly or impliedly contract any debt or obligation, or give any receipt, in the name of **WAUKESHA**.

M.  Distributor shall make available to its customers such instructions, tools, advertising materials, sales literature and replacement parts as they may reasonably require for the sales, servicing and repairing of Waukesha Products.

N.  Distributor acknowledges that all goodwill and enhancements accruing due to Distributor's efforts hereunder to the name **WAUKESHA**, or to Waukesha Products, or to **WAUKESHA**'s reputation and distribution network will accrue to the sole benefit of **WAUKESHA** and will constitute valuable assets solely owned by **WAUKESHA** and its affiliates, and Distributor shall use its best efforts to maintain and enhance the distribution network and the reputation, usefulness and acceptance of such name and Waukesha Products in all dealings with third parties, and shall conduct all phases of its operations ethically and in such a manner that the name and reputation of **WAUKESHA** and Waukesha Products shall not be adversely affected.

O.  Distributor agrees to furnish **WAUKESHA** with a list of manufacturers and products represented by Distributor at the time of the signing of Agreement.  Distributor agrees to furnish **WAUKESHA** an amended list within thirty days after any change in such representation.

**ARTICLE III      COMMISSIONS**

A.      As compensation for Distributor, within its Territory: maintaining the capability to respond to customer needs; providing necessary sales solicitation and service capability and staff; and performing warranty, start-up, or other technical services required by **WAUKESHA** on any Permanent Installation or Mobile Installation as defined herein, **WAUKESHA** shall, in addition to Discounts (as defined in Exhibit D) offered to Distributor pursuant to this Agreement, pay commissions to Distributor on certain Waukesha Products, according to the following general procedure:

1. Permanent Installations:
   a.   Upon installation, start-up, and commencement in the Territory of warranty on a Permanent Installation, **WAUKESHA** will pay a commission to the Distributor having responsibility for the territory in which the Waukesha Product is installed.  Such commission shall be established in Exhibit F, attached, which Exhibit may be amended by **WAUKESHA** from time to time by written notice thereof to Distributor.
   b.   "Permanent Installation", as used herein, shall mean installation of Waukesha Products in applications wherein the Waukesha Product would be attached to realty, or be so otherwise installed or used in circumstances that there is no reasonable likelihood that the Waukesha Product, or the structure in which Waukesha Product is installed, will be easily moved to, and operated in, other locations.

2. Mobile Installations:
   a.   **WAUKESHA** shall determine whether an installation is permanent or mobile.  Then, for Mobile Installations, **WAUKESHA**, upon installation, start-up and commencement of warranty, will determine which Territory shall have responsibility for maintaining and providing service support capability for the Waukesha Product, and shall pay a commission to the Distributor for such Territory.  Such commission shall be on the actual **WAUKESHA** sales price of the Waukesha Products, EXWORKS plant of manufacture, and such commission shall be established in Exhibit F, attached, which Exhibit may be amended by **WAUKESHA** from time to time by written notice thereof to Distributor.
   b.   "Mobile Installation", as used herein, shall mean installations of Waukesha Products in structures or equipment (such as drilling rigs and marine equipment and vessels) that could easily operate in different distribution territories.

B.      Distributor shall supply to **WAUKESHA** a copy of the Startup Report (as defined from time to time in WAUKESHA's Distributor Policy Manual) on such Waukesha Product within thirty (30) days of the date Waukesha Product is put in service, which Startup Report shall be in a form and format established by **WAUKESHA** from time to time.

C.      Commissions shall be payable thirty (30) days after receipt by **WAUKESHA** of such written Startup Report.

D.      **WAUKESHA** may, on a case-by-case basis, pay the commission due Distributor at a time earlier than provided in Article III.C above, upon proof in writing, in a form acceptable to **WAUKESHA**, that Waukesha Product is being sold  in, or will be

installed and operated in, the Territory of the selling Distributor. Distributor shall then provide the Startup Report within thirty (30) days of the date the Waukesha Product is put in service. However, Distributor agrees that, should it request earlier payment for the above reasons and the Waukesha Product thereafter not be installed and operated in the Territory as represented, or is later sold from stock outside the Territory, then such prior payment shall be immediately payable to **WAUKESHA** by Distributor, shall be deemed a debt owing from Distributor to **WAUKESHA**, and shall be chargeable by **WAUKESHA** against any monies due Distributor from **WAUKESHA**.

E.  No commissions will be paid on any sale of parts.

F.  No commissions will be paid on sales of Waukesha Products to or by **WAUKESHA**-designated original equipment manufacturers (OEM) or to **WAUKESHA**-distributor original equipment manufacturers (DOEM).

G.  Nothing herein shall prevent **WAUKESHA** and Distributor from hereafter agreeing, in a specific case, and without the necessity of amending this Agreement, that **WAUKESHA** shall pay a commission at a rate other than that provided in Exhibit F, and, nothing herein shall prevent **WAUKESHA** from paying any distributor a commission in a specific case for valuable services rendered, without respect to Territory. However, no such specific agreement shall thereafter be deemed a precedent in any other transaction.

H.  In recognition that valuable services may be provided, from time to time, by one distributor to another, it is understood that Distributor may hereafter advise **WAUKESHA** that it has assigned commissions it may be due hereunder to the authorized selling Distributor, and Distributor may request that **WAUKESHA** pay such commissions directly to such other authorized distributor. **WAUKESHA** shall then honor such requests, provided that the requests are in writing and are made in sufficient time for **WAUKESHA** to effect same, and provided that the requests describe the transaction or transactions to which the requests apply and establish the amounts to be paid. However, **WAUKESHA** shall not become liable to Distributor or to any other distributor under any circumstances for disputes between distributors in such instances, or for errors or omissions in payment made by **WAUKESHA** pursuant to any such requests. It is further understood that no such requests and assignments shall thereafter be deemed a precedent in any other transactions.

**ARTICLE IV          PROMOTIONAL ASSISTANCE AND TRADE SHOWS**
A.    **WAUKESHA** shall advise Distributor of inquiries which it receives with respect to sale of Waukesha Products within the Territory which are not pursued otherwise by **WAUKESHA**, and shall offer to Distributor such advertising materials, sales literature, aids, and instructions as it may deem reasonably necessary to assist Distributor in the promotion and sale of Waukesha Products.
B.    **WAUKESHA** shall advertise Waukesha Products on a national basis and shall participate in such trade shows as in its judgment may be appropriate for the promotion of Waukesha Products.
C.    Distributor shall be responsible for representation of Waukesha Products at regional and trade shows covering the Territory.

**ARTICLE V          ANNUAL SURPLUS INVENTORY RETURN**
A.    **WAUKESHA** agrees to accept annual returns of **WAUKESHA** parts.  Such returns shall be limited to a maximum total value of no more than two percent (2%) of the previous calendar year's stock order value placed on **WAUKESHA**.  The limit is valued at current Distributor net prices.
B.    In addition to the maximum value set out above, such returns shall be subject to the conditions and limitations as are set out in **WAUKESHA**'s standard policies and manuals from time to time, (including without limitation WAUKESHA's Distributor Policy Manual) or that are communicated from **WAUKESHA** to Distributor in writing from time to time

**ARTICLE VI          RETURN OF PARTS REMOVED BY DISTRIBUTOR FROM NEW ENGINES OR UNITS**
A.    **WAUKESHA** will agree to accept the return of certain categories of parts that Distributor has had to remove from new Waukesha Products because of requirements or specifications of Distributor's customer. The categories of parts subject to return hereunder, and the times for such return, shall be established by **WAUKESHA** from time to time.  Further, such returns are subject to the following conditions and limitations:
   1. That the parts returned shall be unused.
   2. That Distributor shall have first submitted to **WAUKESHA** a list of such removed parts, together with the serial number of the new Waukesha Product purchased by Distributor from which the parts were removed, along with acceptable documentation of the customer requirements or specifications.
   3. That such list is submitted to **WAUKESHA** within thirty (30) days following removal of such parts from the Waukesha Product requiring conversion.
B.    **WAUKESHA** shall first determine whether to accept and authorize the parts for return, and, then, all parts, when authorized by **WAUKESHA** for return, shall be shipped freight prepaid by the Distributor to the plant or place designated by **WAUKESHA**.
C.    Distributor shall be responsible for any loss or damage to the parts occurring prior to receipt by **WAUKESHA**.
D.    **WAUKESHA** shall generally accept the return of normal parts and components except those parts and components that cannot be reused by **WAUKESHA**.

Examples of typically non-useable parts and components are: sheet metal parts, ignitions, wiring, pipe and pipe fittings, oil line fittings, hose or hose clamps, spark plugs, carburetors, air cleaners, filters, cooling components and obsolete or special parts.

E.  In the event that paint removal or other salvage or repair work is performed by **WAUKESHA** on returned parts; the cost of such work shall be deducted from the credit amount allowed Distributor for such parts.

F.  Credit allowance for removed parts accepted by **WAUKESHA** shall be based on engine or unit net sales prices in effect at the time the engine or unit was purchased from **WAUKESHA**, less fifteen percent (15%) to cover handling and restocking.

## ARTICLE VII        WARRANTY TERMS

A.  **WAUKESHA**'s Warranty Certificate in effect from time to time as found in the Distributor Policy Manual sets forth the terms of **WAUKESHA**'s warranty of Waukesha Products, including the limitations thereof, to Distributor and to Distributor's customer.  Distributor by this Agreement accepts the terms of such warranty, including the limitations thereof, as part of the terms governing its purchases of Waukesha Products from **WAUKESHA** and as governing any warranty obligations of **WAUKESHA** to Distributor's customers.

B.  Distributor shall not extend or otherwise modify such warranty or any of the limitations thereof with respect to any customer and will assure that such warranty, including limitations thereof, governs the obligations of **WAUKESHA** to all Distributor's customers.

C.  If Distributor believes that unusual circumstances justify the extension or enlargement of such warranty or of the limitations thereof in any instance, it may request that such extension or enlargement be granted by **WAUKESHA**. Such extension or enlargement may be granted by **WAUKESHA** in its sole discretion, and shall not be effective unless in writing and signed by the Vice President, Customer Service of **WAUKESHA** or such other person as **WAUKESHA** may specify in writing.

D.  Distributor hereby agrees to defend, indemnify and hold **WAUKESHA** harmless from claims or demands of third parties arising out of any acts or omissions of Distributor in connection with the sale and/or service of Waukesha Products hereunder.   In addition, Distributor agrees to defend, indemnify and hold **WAUKESHA** and its subsidiaries harmless from claims or demands of third party customers of Distributor of Waukesha Products, when such claims or demands are based on obligations or liabilities assumed by Distributor which exceed the obligations and liabilities assumed by **WAUKESHA** and its subsidiaries under the General Terms of Sale from time to time in effect.

**ARTICLE VIII        INSTRUCTION, STARTUP AND WARRANTY SERVICE**

A.      Nothing in this Agreement shall prevent **WAUKESHA**, in its discretion, and in the interest of Waukesha Product and service integrity and end-user satisfaction, from providing various repair or other services within the Territory, either on a direct basis, or through other qualified distributors, or through **WAUKESHA**-authorized service agents or representatives. Further, nothing shall prevent **WAUKESHA** from establishing, for purposes of service and repair of Waukesha Products, defined areas within the Territory in which **WAUKESHA** may appoint service and repair agents or representatives. However, **WAUKESHA** shall give Distributor reasonable notice under the circumstances of its intention to make such appointments.

B.      Subject to the above, however, the Distributor shall at all times have the following responsibilities and obligations within the Territory:

1. In consideration of the commission arrangement hereunder, Distributor shall be fully responsible for providing all instruction, startup and other service required in connection with Waukesha Products sold either by Distributor or by any other party for use or installation within the Territory. It is understood, however, that this obligation shall not extend to equipment other than Waukesha Products.

2. Distributor shall similarly be obligated to provide all warranty service which is required pursuant to **WAUKESHA**'s warranty policy with respect to any Waukesha Product used or installed within the Territory, or which is otherwise deemed necessary to Distributor or **WAUKESHA** to maintain the customer's goodwill in connection with any Waukesha Product.  Distributor shall be reimbursed for labor performed in connection with such warranty service on the basis of the warranty service compensation formula from time to time stated in the Distributor Policy Manual.  Any replacement parts required for the performance of all service performed pursuant to **WAUKESHA**'s warranty policy that are not in Distributor's current stock shall be timely supplied by **WAUKESHA** EXWORKS, **WAUKESHA**'s plant of manufacture.  However, should such required replacement parts be in Distributor's current stock, such parts shall be utilized, and Distributor shall provide such parts? **WAUKESHA** shall then reimburse Distributor for all parts used from Distributor's inventory at the then-current rate as stated in the Distributor Policy Manual.

3. The provisions of paragraph B.1, above, shall not apply to sales made to Original Equipment Manufacturers, nor to Waukesha Products that are transported into, or out of, the originally determined Territory by the ultimate end-use customer after purchase and initial installation.  However the Distributor would be responsible to provide instruction, startup and other services for OEM or transferred Waukesha Products installed within the Territory, for pay, if requested by the customer.

**ARTICLE IX       RECORDS AND REPORTS**

A.    Distributor shall keep, in a manner satisfactory to **WAUKESHA**, accurate and complete records of all transactions entered into by Distributor in connection with the purchase and sale, including export clearance if applicable, of Waukesha Products by Distributor.  Such records shall include, but not be limited to the name and address of every customer to whom the Distributor makes sales of Waukesha Products or performs warranty service on Waukesha Products during each calendar year, and the location of delivery and installation of such Waukesha Products. Records should also include end-user and end-use information for any exports or re-exports as needed for U.S. export control regulations.  Distributor shall submit to **WAUKESHA**, on a guaranteed basis, and in a form and format required by **WAUKESHA**, a listing of all sales made by Distributor, with a corresponding listing of the purchase, and location of delivery or installation and any export licenses or government written authorization if applicable. Such records shall be open to inspection at all reasonable times by an authorized representative of **WAUKESHA** and shall be turned over to **WAUKESHA** upon the expiration or termination of this Agreement.

B.    Distributor shall furnish **WAUKESHA** with special reports on Distributor's sales or service efforts, facilities, condition of the market, customer preferences, engine population or other matters, as **WAUKESHA** may reasonably request.  Reports shall be issued within 10 days after month end.

C.    Distributor shall furnish to **WAUKESHA** each year, within one hundred twenty (120) days after the close of Distributor's fiscal year, an annual financial statement and such other financial information concerning Distributor's business as **WAUKESHA** may from time to time request.

D.    Distributor shall furnish to **WAUKESHA** within one hundred twenty (120) days after the close of the fiscal year of Distributor a written statement of inventory of each Waukesha Product on hand at the end of such fiscal year.

**ARTICLE X       TRADE NAMES, TRADEMARKS AND CONFIDENTIALITY**

A.    **WAUKESHA** grants to Distributor the right to use the trade names and trademarks of **WAUKESHA** in connection with the sale and advertising of Waukesha Products, provided that:

1. Distributor has no authority for itself or for the benefit of others other than **WAUKESHA** to register or use or to permit others to register or use the name or trademarks of **WAUKESHA**, except as expressly set forth herein or as **WAUKESHA** hereafter may authorize in writing.  No such trade name or trademark shall be used in such a manner that it may become a generic work, thus losing its status as a unique, protected trade name or trademark;

2. Distributor shall not use such trade names or trademarks or any variant thereof as the whole or any part of its title or in the name of its business except upon **WAUKESHA**'s expressed written consent to such use;

3. Distributor shall not use such trade names or trademarks in any manner in connection with an effort to sell the goods of others, whether or not such goods are competitive with the Waukesha Products, and shall not use such trade names or trademarks as part of its business name in the event it sells products

competitive with Waukesha Products.  Specimen copies of stationery, product literature, business cards or advertising relating to WAUKESHA Products and contemplated for use by Distributor shall, upon **WAUKESHA**'s request, be forwarded to **WAUKESHA** for its approval prior to use.  Such items shall not be used if disapproved by **WAUKESHA**.

4.  Distributor shall not use or allow the use of any trade name or trademark which is likely to cause confusion, mistake or deception with respect to any of the other trade names or trademarks of **WAUKESHA**.

5.  Distributor agrees that it does not have and shall not acquire any rights in the trademarks, trade names or other intangible property of **WAUKESHA** that are used in the sale of or otherwise in connection with Waukesha Products.  All goodwill accruing to **WAUKESHA** trademarks or other intangible property in the Territory during the term hereof shall be the property of and for the benefit solely of **WAUKESHA.**

B.  Upon termination of this Agreement, Distributor shall discontinue any and all use of **WAUKESHA**'s trade names, trademarks and any other identification with **WAUKESHA** and shall avoid any statement or implication that Distributor is a **WAUKESHA** Distributor.

C.  Distributor agrees to safeguard as confidential all price books, customer lists, quotations, discount sheets and engineering data, in any form, of Waukesha Products and will not permit their use in any way which would be detrimental to **WAUKESHA** or its affiliates.  Distributor further agrees to surrender all confidential data to **WAUKESHA** either on request or on cancellation or termination of this Agreement, and will not retain copies or memoranda of said information in any form whatsoever.

## ARTICLE XI        FORCE MAJEURE AND LIMIT OF LIABILITY

A.  **WAUKESHA** shall not be liable for delays in delivery or no delivery of all or part of any order resulting from any cause beyond its control including, without limitation, acts of God, fire, flood, strike, lockout, factory shutdown or alteration, act of civil or military authority, insurgency, priority request, embargos, order or instruction of any national or local government or any department, agency or representative, shortage or delay, weather, accident, wreckage or inability to obtain labor or material from **WAUKESHA**'s usual sources.

B.  In the event of shortage of Waukesha Products for any reasons, **WAUKESHA** may allocate its available supply among itself and all its customers in an equitable manner including those not under contract, as well as those whose orders have been accepted.

C.  Delivery dates will be extended to the extent of delays resulting from circumstances described in paragraphs A and B of this Article, and no delivery shall be deemed overdue, regardless of cause.

D.  Any claims for shortage in any delivery to Distributor must be made within thirty (30) days after Distributor's receipt of delivery.  All other claims provided for elsewhere herein must be made within thirty (30) days after Distributor learns of the facts on which such claim is based.  Any claim not made in writing and received by **WAUKESHA** within the time periods specified above shall be deemed waived.

E.    **WAUKESHA**'s liability for any and all losses or damages to Distributor resulting from defective Waukesha Products or from any other cause shall be limited to the purchase price of the particular Waukesha Products with respect to which losses or damages are claimed paid by Distributor for shipment of such Waukesha Products to Distributor, or at **WAUKESHA**'s option, its liability shall be limited to the repair or replacement of defective or damaged Waukesha Products, or refund of an equitable portion of the price.

F.    Distributor hereby agrees to defend, indemnify and hold **WAUKESHA** harmless from claims or demands of third parties arising out of any acts or omissions of Distributor in connection with the sale and/or service of Waukesha Products hereunder.   In addition, Distributor agrees to defend, indemnify and hold **WAUKESHA** and its subsidiaries harmless from claims or demands of third party customers of Distributor of Waukesha Products, when such claims or demands are based on obligations or liabilities assumed by Distributor which exceed the obligations and liabilities assumed by **WAUKESHA** and its subsidiaries under the General Terms of Sale from time to time in effect.

G.    **WAUKESHA'S** LIABILITY SHALL BE LIMITED TO DIRECT ACTUAL DAMAGES ONLY. SUCH DIRECT ACTUAL DAMAGES SHALL BE THE SOLE AND EXCLUSIVE REMEDY, AND ALL OTHER REMEDIES OR DAMAGES AT LAW OR IN EQUITY ARE WAIVED BY DISTRIBUTOR. NOTWITHSTANDING ANYTHING TO THE CONTRARY HEREIN,  **WAUKESHA** SHALL NOT BE LIABLE FOR CONSEQUENTIAL, INCIDENTAL, PUNITIVE, EXEMPLARY OR INDIRECT DAMAGES, LOST PROFITS OR OTHER BUSINESS INTERRUPTION DAMAGES, BY STATUTE, IN TORT OR CONTRACT, UNDER ANY INDEMNITY PROVISION OR OTHERWISE.

## ARTICLE XII      TERM AND TERMINATION

A.    This Agreement shall become effective as of the date hereof and shall remain in effect for a period of three ( 3 ) year(s) from such date, unless earlier terminated as follows;

1. This Agreement may be terminated at any time during the initial term and during any renewal term by either party upon giving the other party not less than ninety-three (93) days written notice of termination, said period to extend from the postmarked date on the written notice deposited in the mail, registered with postage prepaid, addressed to the last known address of the other party.

2. Distributor agrees that occurrence of any of the following events shall constitute cause for termination and that upon the happening of any of same, **WAUKESHA** may terminate this Agreement by giving written notice of termination to Distributor, effective immediately or as otherwise hereinafter indicated:

   a. Distributor has failed to comply with any of the terms of this Agreement and has not remedied such failure within ninety-three (93) days after **WAUKESHA** gives notice;

   b. Distributor ceases to function as a going concern, or a receiver for it is appointed or applied for, or a petition under any bankruptcy or corporate reorganization law, is filed by or against it, or it makes an assignment for the benefit of creditors; or

c. There is a change in management or control of Distributor, whether caused by a sale, transfer or assignment of equity, shares or other ownership interests, or whether caused by death or incapacity of a principal officer, owner or stockholder, or otherwise. To assist Distributor to realize the value of its investment in the **WAUKESHA** distributorship, **WAUKESHA** agrees to continue the term of this Agreement for a period of ninety-three (93) days after **WAUKESHA** is given notice of a change in management or control or otherwise learns of such change to enable Distributor to find a successor who is acceptable to **WAUKESHA**. **WAUKESHA** may extend, this period for a further ninety-three (93) day period, provided Distributor requests the extension in writing and provides evidence that Distributor is diligently attempting to locate a successor or commercially acceptable and realistic terms;

d. Distributor sells inventory upon which **WAUKESHA** has a secured interest out of trust or fails to timely provide promissory notes, assignments, guarantees or other commercial documents required by **WAUKESHA** pursuant to this Agreement;

e. Distributor operates, directly or indirectly, from non-authorized places or locations of business and fails to discontinue such operation within ninety-three (93) days after **WAUKESHA** gives notice;

f. Distributor sells or represents a product or line of products that are competitive with the Waukesha Products and fails to discontinue such representation within ninety-three (93) days after **WAUKESHA** gives notice.

g. Distributor fails, except for reasons beyond its control, to achieve the goals of its marketing plan established pursuant to Article II.C hereof.

Upon the occurrence of any of the above events which give **WAUKESHA** the right to terminate this Agreement, **WAUKESHA** and Distributor agree that they will in good faith negotiate within the time limits set forth above, to reach mutual agreement for the orderly termination of or transfer of this Agreement and distributorship in such a manner that will be least disruptive to both parties. **WAUKESHA** shall be deemed to have discharged its duty to act in good faith and its duty of fair dealing by granting any further extension of time hereunder, particularly with respect to termination pursuant to Article XII.A.2.c. above.

B. Upon any expiration or termination of this Agreement:

1. **WAUKESHA** shall deliver and Distributor shall accept only such Waukesha Products as Distributor shall then be under obligation to sell or deliver. **WAUKESHA** may, before making such deliveries to Distributor, require Distributor to furnish satisfactory proof of such obligations;

2. **WAUKESHA** shall have the option, exercisable by written request within thirty (30) days after such expiration or termination, to repurchase any or all of the Waukesha Products, except Waukesha Products subject to deterioration over time such as gaskets, rubber products, etc., which may be in the possession of Distributor on the date of such expiration or termination. The price paid to Distributor for such Waukesha Products shall be fair market value which is defined as **WAUKESHA**'s net price EXWORKS **WAUKESHA**'s plant then in

effect for such Waukesha Products, less fifteen percent (15%) to cover handling and restocking and less the cost of reconditioning and repairing of any such Waukesha Products which may be used or damaged, less obsolescence and depreciation, if any. Any funds payable for return of Waukesha Products shall first be applied to any outstanding indebtedness of Distributor owing to **WAUKESHA**. Proceeds from the purchase of Waukesha Product hereunder may not be assigned without written consent of **WAUKESHA**.

3. Distributor shall, upon the written request of **WAUKESHA** submitted within thirty (30) days after the effective date of expiration or termination of this Agreement, assign to **WAUKESHA,** if requested in writing by **WAUKESHA**, authorized specific maintenance, repair and operations contracts covering Waukesha Products entered into by Distributor in the ordinary course of business ("MRO Contracts") prior to, as the case may be, any expiration date or date of notice of termination from **WAUKESHA**. Upon such assignment(s), **WAUKESHA** shall thereafter assume all prospective rights and obligations of Distributor under such assigned MRO Contracts. After all monies due **WAUKESHA** are paid from proceeds of the MRO Contracts, Distributor shall receive reasonable mutually agreed upon reimbursement of Distributor's expenses through the date of assignment upon Distributor's submission to **WAUKESHA** of reasonable evidence of such expenditure. With respect to MRO Contracts not assumed by **WAUKESHA**, Distributor shall be entitled to purchase Waukesha Products for a period not to exceed twelve (12) months from the effective expiration or termination date of this Agreement at the prices provided for herein solely in order to complete Distributor's obligations under those contracts.

4. It is further expressly understood and agreed that no indemnity or termination benefits will be due or payable to Distributor on termination of this Agreement, and Distributor hereby expressly waives the application of any law, statute, collective contracts or custom to the contrary.

## ARTICLE XIII    COMPLIANCE WITH LAWS AND BUSINESS CONDUCT

A.    Distributor agrees to comply with all applicable laws, rules and regulations, and will do nothing that will cause **WAUKESHA** or any Affiliate to be in violation of any law, guideline or regulation of the United States of America or any other country. Distributor will not, directly or indirectly, give, offer or promise to give any money or other thing of value to any governmental official, political party or official, or candidate for such offices, for the purpose of influencing any act or decision of such person, in an official capacity, in order to obtain or retain business related to this Agreement.

B.    Distributor understands and agrees that products sold and any technical data provided hereunder may be subject to export and other foreign trade controls restricting re-sales and/or transfers to other countries and parties, including, but not limited to, licensing requirements under applicable law and regulation of the United States. Any other provision of this Agreement to the contrary notwithstanding, Distributor agrees that no products or technical data of U.S. origin or with U.S.-origin content will be sold, re-exported or transmitted, directly or indirectly, except in full compliance with all relevant U.S. government requirements. In particular, Distributor

agrees that it will not export or re-export any of the products or technical data provided hereunder to any country, government, person, entity, organization or end-user subject to U.S. foreign trade restrictions and, in particular, not to any of the following:

(i) any country to which such product and data may not be exported or transmitted without prior specific authorization of the Bureau of Industry and Security, U.S. Department of Commerce, pursuant to the Export Administration Regulations ("EAR") (15 C.F.R. Parts 730 to 774), including through release or disclosure of technical data to a national of another country, wherever located, who is not a citizen or permanent resident of the United States;

(ii) any country, government, person, entity or organization to which the United States has embargoed or restricted the export or re-export of data or services under the sanctions programs administered by the Office of Foreign Assets Control, U.S. Department of the Treasury (31 C.F.R. Parts 500 to 598);

(iii) any end-user if Distributor knows that the end-user will utilize any of the data in the design, development or production of nuclear, chemical or biological weapons or missile-delivery systems therefore; or

(iv) any end-user who has been prohibited from participating in U.S. export transactions by any federal agency of the U.S. government.

C. Distributor understands and agrees that for exports subject to laws and regulations under the United States, Distributor is the Principal Party in interest for the export transaction and expressly assumes responsibility for determining licensing requirements and obtaining license authority, making the Distributor the exporter for EAR purposes. Distributor understands and agrees that its assigned U.S. designated forwarding or other agent will provide to **WAUKESHA** proof of electronic filing of the U.S. export declaration information, for purposes under the Foreign Trade Regulations and export control purposes under the EAR, within 10 days upon request from **WAUKESHA**.

D. Further Distributor hereby agrees, represents and warrants that it will comply in all respects with **WAUKESHA's** Code of Business Conduct for International Business Relationships as it may apply and be amended from time to time, a copy of which is attached hereto as Schedule "G".

E. Distributor also agrees that **WAUKESHA** may periodically request, and Distributor shall provide, written certification that Distributor has complied with all applicable laws set forth herein. Any violation of this Article, as determined solely by **WAUKESHA**, shall be deemed a material breach of this Agreement and shall be grounds for immediate termination of this Agreement. In such case, **WAUKESHA** shall have no further obligations to Distributor whatsoever hereunder and hereby waives any and all claims against **WAUKESHA** for termination resulting from violation of this Article.

F. The foregoing obligations of this Article shall survive any termination, expiration or discharge of any other obligations under this Agreement.

## ARTICLE XIV        MISCELLANEOUS

A.     **WAUKESHA** reserves the right to appoint other Distributors in the Territory if **WAUKESHA** determines that demand, market, service or distribution conditions in the Territory justify such further appointments.

B.     Distributor shall not directly or indirectly sell, assign or in any way transfer this Agreement, or any of Distributor's rights or obligations hereunder without the prior written consent of **WAUKESHA**.

C.     All notices to be given hereunder except under Article XII shall be sent by 1) regular mail with postage prepaid thereon; or 2) by facsimile or Email, followed by confirming copy via mail or courier, addressed to the last known address or fax number of the other party. All notices shall be sent to the addresses specified below, or to such other addresses as may be subsequently designated for this purpose.

Attn: Controller
Waukesha Engine, Dresser, Inc.
1101 West St. Paul Avenue
Waukesha, Wisconsin 53188, U.S.A.
Fax: 262.650.5575
Email: dan.hansen@waukeshaengine.dresser.com

Distributor:
Interstate Power Systems
2501 American Blvd. East
Minneapolis, MN 55425
Fax: (952) 854-2999
Email: tpenrod@istate.com

D.     The delay be either party in exercising any of its rights hereunder or the failure of either party to assert or exercise any such right, including the right to terminate this Agreement for any reason, shall in no way operate as a waiver of such right.

E.     This Agreement constitutes the only Agreement between the parties relating to matters covered by this Agreement or relating in any way to Distributor's authority to act as a Distributor for **WAUKESHA**, and it cancels and takes the place of any previous Distributor Agreements, if any, heretofore made between Distributor and **WAUKESHA** or any subsidiary, affiliate or predecessor of either of them. No modification hereof shall be binding unless it is in writing, duly executed by both parties.

F.     This Agreement shall be treated for all purposes as having been executed in the State of Texas, U.S.A. and the parties expressly agree that this Agreement and the obligations of the parties hereunder shall at all times, including those at expiration or termination hereof, be governed by and construed only under the laws of the State of Texas, excluding its conflicts of law rules.

G.     Distributor agrees to fully exculpate, indemnify and hold **WAUKESHA** harmless from and against all claims and actions for personal injury, including death, or damage to or destruction of property caused by or arising out of the obligations to

be performed by Distributor as defined in this Agreement.  Upon request, Distributor shall assume, without expense to **WAUKESHA**, the defense of each such claim or action for which the Distributor bears responsibility and shall, in each instance, reimburse **WAUKESHA** for all expenses incurred by **WAUKESHA** in investigating, handling and defending such claims or actions.  Distributor shall also pay all judgments, awards or settlements resulting from such claims and actions.

H.   In the event that **WAUKESHA** should bring any legal action or arbitration to enforce any of the obligations to be performed by Distributor in this Agreement, or to seek damages from any breach of any said obligations, Distributor shall reimburse **WAUKESHA** the costs and expenses of such actions including attorneys' fees.

I.   **Any controversy arising under or in relation to this agreement shall be settled by arbitration, before a panel of three arbitrators in Dallas, Texas in accordance with the International Arbitration Rules then in force of the American Arbitration Association. Each party shall appoint one arbitrator, and the two appointed arbitrators shall then appoint a third arbitrator.  If the amount in controversy is less than US$250,000.00, only one arbitrator shall be used.  Such arbitration shall be conducted in English and shall be binding upon the parties, and judgment upon the award of the arbitrators may be entered in any court having jurisdiction thereof.  Nothing herein shall be construed to deny Waukesha the right to seek an injunction in any court of competent jurisdiction.**

J.   All exhibits hereto, including without limitation Exhibits A-G, are by this reference expressly incorporated herein for all purposes as if fully set out in this Agreement.

K.   This Agreement does not establish Distributor as the employee, servant, agent or legal representative of **WAUKESHA**, and Distributor represents that it is and will continue to be an independent merchant or enterprise.  **WAUKESHA** shall not be responsible in any way for any obligation or liability incurred or assumed by Distributor or its employees or servicemen.

L.   During the term of this Agreement, Distributor shall maintain comprehensive general liability insurance covering bodily injury and/or death, and property damage, including contractual liability, with limits of liability not less than One Million Dollars ($1,000,000) for bodily injury/and or death, per occurrence, and not less than One Million Dollars ($1,000,000) for property damage, per occurrence.  All such insurance shall name **WAUKESHA** as an additional insured and shall be with an insurer that is acceptable to **WAUKESHA**.  Such insurance coverage shall be specifically endorsed to include the indemnity obligations of Distributor to **WAUKESHA** under Article XI.F above.  Distributor shall deliver to **WAUKESHA** a Certificate of Insurance issued by the insurer as evidence of the above insurance coverage and it shall further provide that Distributor's insurance will not be modified or canceled except after thirty (30) days' written notice to **WAUKESHA**.

M.   Upon expiration or termination of this Agreement, the duties and obligations of each Party under this Agreement shall cease as of the effective date of such expiration or termination; provided, however, that the other duties and obligations of a Party under this Agreement that, by their nature, are to be performed or observed after such expiration or termination shall survive the expiration or termination of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

WAUKESHA ENGINE, DRESSER, INC.
By: _____
        L.S. Beauchamp
Title:   Vice President-Sales

APPROVED
BY OCK
LEGAL

DISTRIBUTOR:
Interstate Power Systems
By: _____

Title:   PRESIDENT _____

## EXHIBIT A
## WAUKESHA PRODUCTS

THE WAUKESHA PRODUCTS CONSIST OF:

1. ATGL products with Distributor appointed by Waukesha as a Master distributor of ATGL Waukesha Products; and
2. All other products from time to time agreed to by WAUKESHA, including without limitation internal combustion engines, power units and Enginator® products manufactured and/or marketed under the Waukesha trade name, and any and all parts therefore.

   It is understood that the above Waukesha Products do not include fuel research (CFR) engines and parts.

WAUKESHA ENGINE, DRESSER, INC.

By: _L.S. Beauchamp_ _[APPROVED BY OCH, LEGAL]_
      L.S. Beauchamp
Title: _Vice President - Sales_

DATE: _5-15-07_

DISTRIBUTOR
Interstate Power Systems

By: _____

Title: _PRESIDENT_

## EXHIBIT B
## TERRITORY

The Distributor's Territory shall be non-exclusive for:

**See attached list following this page for detail of territory.**

WAUKESHA ENGINE, DRESSER, INC.

By: _L.S. Beauchamp_
    L.S. Beauchamp

Title: Vice President-Sales

DATE: _5-15-07_

APPROVED
BY O.C.IC
LEGAL

DISTRIBUTOR
Interstate Power Systems

By: _____

Title: PRESIDENT

Interstate Territory Map



Copyright © 1988-2003 Microsoft Corp. and/or its suppliers. All rights reserved. http://www.microsoft.com/mappoint
© Copyright 2002 by Geographic Data Technology, Inc. All rights reserved. © 2002 Navigation Technologies. All rights reserved. This data includes information taken with permission from Canadian authorities © 1991-2002 Government of Canada (Statistics Canada and/or Geomatics Canada), all rights reserved.

## EXHIBIT C
## APPROVED LOCATIONS

The following locations and places of business are hereby authorized by WAUKESHA pursuant to this Agreement:

1.    Distributor Operations:

*See attached list*

2.    Dealers:

*none*

3.    Service Centers:

*none*

Waukesha Engine, Dresser, Inc.

By: *L.S. Beauchamp*

L.S. Beauchamp

Title: Vice President - Sales

*APPROVED BY OCK LEGAL*

DATE: *5-15-07*

DISTRIBUTOR
Interstate Power Systems

By: _____

Title: PRESIDENT

# INTERSTATE PowerSystems

**Branch Locations**

---

| | |
|---|---|
| **INTERSTATE POWERSYSTEMS**   (Main Location)<br>2501 & 2601 American Blvd. East<br>**Minneapolis, MN 55425** | **INTERSTATE POWERSYSTEMS**<br>1921 16th Avenue West<br>**Virginia, MN 55792** |

**INTERSTATE POWERSYSTEMS**   (Main Location)
2501 & 2601 American Blvd. East
**Minneapolis, MN 55425**

| | |
|---|---|
| *Phone:* | (952) 854-5511 |
| *Fax:* | (952) 854-2999 |
| *Parts:* | (952) 854-2598 |
| *Parts Fax:* | (952) 854-1788 |
| *Service:* | (952) 854-3270 |
| *Service Fax:* | (952) 814-0528 |
| *After Hours:* | (952) 854-5511 |

Hours of Operation:

| | |
|---|---|
| *Monday-Friday:* | 7:30 AM to Midnight |
| *Saturday:* | On-Call |
| *Sunday:* | On-Call |

| | |
|---|---|
| *President* | Travis Penrod |
| *Vice President, Operations (MN):* | Bob Woodward |
| *General Sales Manager:* | Carl Brown |
| *Sales Mgr.- Power Generation:* | Dave Walch |
| *OEM Sales:* | Jesse Martel |
| *Parts Manager:* | Randy Radloff |
| *Service Manager:* | Dan Welke |
| *Asst.Service Manager:* | Merle Wares |

**INTERSTATE POWERSYSTEMS**
1921 16th Avenue West
**Virginia, MN 55792**

| | |
|---|---|
| *Phone:* | (218) 749-4484 |
| *Fax:* | (218) 749-3927 |
| *After Hours:* | (218) 749-4484 |

Hours of Operation:

| | |
|---|---|
| *Monday-Thursday:* | 7:00 AM to Midnight |
| *Friday:* | 7:00 AM to 3:30 PM |
| *Saturday:* | On-Call |
| *Sunday:* | On-Call |

Personnel:

| | |
|---|---|
| *Branch Manager:* | Terry Edmonds |
| *Parts Manager:* | Chuck Gray |
| *Service Manager:* | Marty Flaschberger |

---

**INTERSTATE POWERSYSTEMS**
8200 North Fairmount Street
**Davenport, IA 52806**

| | |
|---|---|
| *Phone:* | (563) 388-9988 |
| *Fax:* | (563) 386-9386 |
| *After Hours:* | (563) 388-9988 |

Hours of Operation:

| | |
|---|---|
| *Monday-Friday:* | 7:00 AM to 11:00 PM |
| *Saturday:* | On-Call |
| *Sunday:* | On-Call |

Personnel:

| | |
|---|---|
| *Branch Manager:* | Gary Bell |
| *Parts Manager:* | Jim Earel |
| *Service Manager:* | Arlen Eichmann |

**INTERSTATE POWERSYSTEMS**
407 Adventureland Drive
**Altoona, IA 50009**

| | |
|---|---|
| *Phone:* | (515) 957-3300 |
| *Fax:* | (515) 957-3301 |
| *After Hours:* | (515) 957-3300 |

Hours of Operation:

| | |
|---|---|
| *Monday-Friday:* | 7:00 AM to Midnight |
| *Saturday:* | On-Call |
| *Sunday:* | On-Call |

Personnel:

| | |
|---|---|
| *Branch Manager:* | Mick Swofley |
| *Parts Manager:* | BK Waller |
| *Service Manager:* | Lance Hadler |

**I O W A**

# INTERSTATE
## PowerSystems

**Branch Locations**

| | |
|---|---|
| INTERSTATE POWERSYSTEMS<br>1140 Main Street<br><br>**Billings, MT 59105** | INTERSTATE POWERSYSTEMS<br>5561 Expressway<br>PO Box 16082<br>**Missoula, MT 59808** |

| | | | |
|---|---|---|---|
| *Phone:* | (406) 248-2800 | *Phone:* | (406) 728-7600 |
| *Fax:* | (406) 259-5270 | *Fax:* | (406) 721-6624 |
| *After Hours:* | (406) 252-4191 | *After Hours:* | (406) 728-7600 |

Hours of Operation:

| | | | |
|---|---|---|---|
| *Monday-Friday:* | 8:00 AM to 7:00 PM | *Monday-Friday:* | 8:00 AM to 7:00 PM |
| *Saturday:* | On-Call | *Saturday:* | On-Call |
| *Sunday:* | On-Call | *Sunday:* | On-Call |

Personnel:

| | | | |
|---|---|---|---|
| *Branch Manager* | Mike Ray | *Branch Manager:* | Bob Goodsell |
| *Parts Manager:* | Brian Maher | *Parts Supervisor:* | Scott Hale |
| *Service Manager:* | Charley Stiles | *Service Manager:* | John Hullberg |

**MONTANA**

| | |
|---|---|
| INTERSTATE POWERSYSTEMS<br>3801 Commerce Drive<br>**Bismarck, ND 58501** | INTERSTATE POWERSYSTEMS<br>3902 12th Avenue North<br>**Fargo, ND 58102** |

| | | | |
|---|---|---|---|
| *Phone:* | (701) 258-2303 | *Phone:* | (701) 282-6556 |
| *Fax:* | (701) 224-0322 | *Fax:* | (701) 277-1006 |
| *After Hours:* | (701) 400-5688 | *After Hours:* | (701) 282-6556 |

Hours of Operation:

| | | | |
|---|---|---|---|
| *Monday-Friday:* | 8:00 AM to 5:00 PM | *Monday-Friday:* | 7:00 AM to 11:30 PM |
| *Saturday:* | On-Call | *Saturday:* | On-Call |
| *Sunday:* | On-Call | *Sunday:* | On-Call |

Personnel:

| | | | |
|---|---|---|---|
| *Branch Manager:* | Dave Polsfuss | *VP, Operations (ND):* | Russ Dreyer |
| *Parts Supervisor:* | Jay Bren | *Branch Manager:* | Bruce Bakke |
| *Service Manager:* | Rodney Bosch | *Parts Manager:* | Jeremy Oistad |
| | | *Service Manager:* | |

| | |
|---|---|
| INTERSTATE POWERSYSTEMS<br>3450 South 42nd Street<br>**Grand Forks, ND 58201** | INTERSTATE POWERSYSTEMS<br>3805 4th Avenue West<br>PO Box 880<br>**Williston, ND 58801** |

| | | | |
|---|---|---|---|
| *Phone:* | (701) 746-8400 | | |
| *Fax:* | (701) 775-9096 | *Phone:* | (701) 572-2000 |
| *After Hours:* | (701) 746-8400 | *Fax:* | (701) 572-0640 |
| | | *After Hours:* | (701) 572-2000 |

Hours of Operation:

| | | | |
|---|---|---|---|
| *Monday-Friday:* | 7:00 AM to 8:00 PM | *Monday-Friday:* | 8:00 AM to 6:00 PM |
| *Saturday:* | On-Call | *Saturday:* | On-Call |
| *Sunday:* | On-Call | *Sunday:* | On-Call |

Personnel:

| | | | |
|---|---|---|---|
| *Branch Manager:* | Gary Berger | *Branch Manager:* | Terry Benson |
| *Service Manager:* | Jay Kidwell | *Parts Supervisor:* | Stacey Hill |
| *Parts Manager:* | Jim Lindvall | *Service Supervisor:* | Jim Grundstad |

**NORTH DAKOTA**

# INTERSTATE PowerSystems

**Branch Locations**

---

INTERSTATE POWERSYSTEMS
10143 South 136th Street
**Omaha, NE  68138**

| | |
|---|---|
| *Phone:* | (402) 331-4104 |
| *Fax:* | (402) 331-2961 |
| *After Hours:* | (402) 331-4104 |

Hours of Operation:
| | |
|---|---|
| *Monday-Friday:* | 7:00 AM to Midnight |
| *Saturday:* | 7:00 AM to 3:30 PM |
| *Sunday:* | On-Call |

Personnel:
| | |
|---|---|
| *V.P. Operations* | Bruce Haggstrom |
| *Parts Manager:* | |
| *Service Manager:* | Jason Huntley |

INTERSTATE POWERSYSTEMS
3200 West O Street
**Lincoln, NE 68528**

| | |
|---|---|
| *Phone:* | (402) 438-3767 |
| *Fax:* | (402) 438-3614 |
| *After Hours:* | (402) 438-3767 |

Hours of Operation:
| | |
|---|---|
| *Monday-Friday:* | 7:00 AM to 3:30 PM |
| *Saturday:* | On-Call |
| *Sunday:* | On-Call |

Personnel:
| | |
|---|---|
| *Branch Manager* | Bruce Haggstrom |
| *Parts Manager:* | |
| *Service Manager:* | Ryan Douma |

**NEBRASKA**

---

INTERSTATE POWERSYSTEMS
801 East 54th Street North
**Sioux Falls, SD  57104**

| | |
|---|---|
| *Phone:* | (605) 339-8839 |
| *Fax:* | (605) 330-0875 |
| *After Hours:* | (605) 339-8839 |

Hours of Operation:
| | |
|---|---|
| *Monday-Friday:* | 7:00 AM to Midnight |
| *Saturday:* | 8:00 AM to Noon |
| *Sunday:* | On-Call |

Personnel:
| | |
|---|---|
| *Branch Manager:* | Doug (Dutch) Van Santen |
| *Parts Manager:* | Scott Woodward |
| *Service Manager:* | Cliff Van Beek |

**SOUTH DAKOTA**

**EXHIBIT D**
**DISCOUNTS**

Prices of Products and terms of sale to Distributor are set forth in Waukesha's current published LIST price list, subject to the following approved Distributor Net discounts:

1   ATGL Waukesha Products
        Engines
            All Models:                    **CONFIDENTIAL**
        Enginator® Products
            Waukesha:
        Parts                              **INFORMATION**
            All Models:
2.   All Other Waukesha Products
        Engines
            All Models:                    **REDACTED**
        Animator® Products
            Waukesha:
        Parts
            All Models:

WAUKESHA ENGINE, DRESSER, INC.

By: _L.S. Beauchamp_

        L.S. Beauchamp

Title: _Vice President - Sales_

DATE: _5-15-07_

DISTRIBUTOR
Interstate Power Systems

By: _____

Title: _PRESIDENT_

APPROVED
BY DC.IL
LEGAL

## EXHIBIT E
## GENERAL TERMS OF SALE

## GENERAL TERMS OF SALE

### 1. GENERAL

(a) On the terms and subject to the conditions set forth herein, Seller agrees to sell to Buyer and Buyer agrees to buy from Seller, the products or services specified on the reverse side of this agreement.

(b) IF THIS AGREEMENT DIFFERS IN ANY WAY FROM BUYER'S ORDER OR IF THIS AGREEMENT IS CONSTRUED AS AN ACCEPTANCE OR CONFIRMATION ACTING AS AN ACCEPTANCE, THEN SELLER'S ACCEPTANCE IS EXPRESSLY MADE CONDITIONAL ON BUYER'S ASSENT TO ANY TERMS OR CONDITIONS CONTAINED HEREIN THAT ARE DIFFERENT FROM OR ADDITIONAL TO THOSE CONTAINED IN BUYER'S WRITING. FURTHER, THIS AGREEMENT SHALL BE DEEMED NOTICE OF OBJECTION TO SUCH TERMS AND CONDITIONS OF BUYER. IF THIS AGREEMENT IS CONSTRUED AS THE OFFER, ACCEPTANCE OF SAME IS EXPRESSLY LIMITED TO THE TERMS AND CONDITIONS CONTAINED HEREIN.  IN ANY EVENT, BUYER'S ACCEPTANCE OF THE ORDERED PRODUCTS OR SERVICES SHALL CONSTITUTE AND MANIFEST BUYER'S ASSENT TO SELLER'S TERMS AND CONDITIONS.

(c) This agreement, together with any additional writings signed by Seller relative to the products or services covered by this agreement, shall represent the complete, agreement between Buyer and Seller and may not be modified, supplemented, or waived, except in a writing signed by an authorized representative of Seller.

### 2. SHIPMENT

(a) Shipment dates offered are estimates and represent the date materials may be available ex-works Seller's facility rather than delivery to destination date.

(b) Shipment dates offered commence only after receipt of Buyer's purchase order, clarification of required technical information, resolution of engineering and/or commercial issues or receipt of customer's written acceptance of drawings when required.

(c) Any product offered from stock is subject to prior sale.

### 3. CANCELLATION

(a) No order may be canceled by the Buyer except upon written notice to Seller and upon payment to Seller of all costs incurred by it arising out of, or in connection with, the order.

(b) Seller shall have the right to cancel any order or to refuse to ship or delay shipment in the event Buyer fails to submit payments when due or perform any other obligations of Buyer.

(c) In the event a validated Export License is denied by the U.S. government, Buyer's order(s) will be immediately canceled and Buyer will be liable for the order value or actual costs incurred whichever the greater.

### 4. RETURN OF GOODS

(a) No product shall be returned to Seller without written authorization and shipping instructions having been obtained from Seller.
(b) Products authorized for return are to be shipped freight prepaid to the ex-works manufacture point and are subject to a restocking charge.

## 5. WARRANTY

(a) Seller warrants that (i) its manufactured products will, at the ex-works point, be free from defects in materials and workmanship and (ii) its services will be performed in a workmanlike manner.
(b) Seller does not warrant that its product is suitable for Buyer's intended purpose. Any product supplied by Seller that Seller does not manufacture shall be subject only to the warranty of the original manufacturer to the extent Seller can enforce such warranty.
(c) Upon Buyer's submission of a claim and substantiation, Seller shall, at its option (i) either repair or replace its nonconforming product or correct or reperform its nonconforming services, as applicable, or (ii) refund an equitable portion of the purchase price attributable to such nonconforming products or services. Seller shall not be liable the cost of removal or installation of materials or any unauthorized warranty work, nor shall Seller be responsible for any transportation cost, unless expressly authorized in writing by Seller. Any products or materials replaced by Seller will become the property of Seller. Repair or replacement of products, or correction or reperformance of services or refund of an equitable portion of the purchase price shall be Seller's only obligation and the sole and exclusive remedy of Buyer in the event of a failure to conform to the foregoing warranty.
(d) THE FOREGOING WARRANTY IS EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES (EXCEPT THAT OF TITLE) EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

## 6. LIMITATION OF LIABILITY

(a) THE LIABILITY OF SELLER UNDER THIS AGREEMENT OR WITH RESPECT TO ANY PRODUCTS SUPPLIED OR SERVICES PERFORMED PURSUANT TO THIS AGREEMENT, WHETHER IN CONTRACT, IN TORT,  IN STRICT LIABILITY OR OTHERWISE, SHALL NOT EXCEED THE PURCHASE PRICE PAID BY BUYER WITH RESPECT THERETO.
(b) IN NO EVENT WILL SELLER BE LIABLE IN CONTRACT, IN TORT, IN STRICT LIABILITY OR OTHERWISE FOR ANY SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING, BUT NOT LIMITED TO, LOSS OF ANTICIPATED PROFITS OR REVENUES, LOSS OF USE, NON-OPERATION OR INCREASED EXPENSE OF OPERATION OF EQUIPMENT, COST OF CAPITAL, OR CLAIMS OF CUSTOMERS OF BUYER FOR FAILURE OR DELAY IN ACHIEVING ANTICIPATED PROFITS OR PRODUCTS.

## 7. TAXES AND DUTIES

(a) Any sales, use or other similar taxes imposed on the sale or other transaction covered by this agreement as well as import or export duties, and customs or similar fees are

not included in the price.  Such taxes, duties, and fees shall be billed separately to Buyer.

(b) Buyer warrants that any products sold or resold or shipped or transshipped to any country or person will not cause Seller to be in violation of any law, guideline or regulation of the United States or any foreign government.

8.  **PRICE AND PAYMENT**

(a) All sales are subject to approval of Seller's credit department.  If Buyer fails to make a payment when due, Seller may (i) withhold all subsequent deliveries until full payment is made and (ii) require such security as Seller deems appropriate to secure future payments.  Full risk of loss and title shall pass to the Buyer upon delivery to ex-works point; however, Seller retains a security interest in all products until paid for in full in cash.

(b) Unless other terms are specified on the reverse side hereof, payment is due in U.S. dollars, thirty (30) days after invoice date.

(c) Amounts not paid by Buyer on or before the due date shall bear interest at the lesser rate of eighteen percent (18.0%) per annum or the maximum rate allowed by law from the due date until paid.

(d) If delivery is delayed by or at the request of Buyer, (I) the date of readiness for delivery shall be deemed date of delivery for invoice purposes and (ii) Seller may impose a storage charge.

9.  **PATENTS**

(a) Seller agrees to assume the defense of any suit for infringement of any United States patents brought against Buyer to the extent such suit charges infringement of an apparatus or product claim by Seller's product in and of itself, provided (i) said product is built entirely to Seller's design, (ii) Buyer notifies Seller in writing of the filing of such suit within ten (10) days after the service of process thereof, and (iii) Seller is given complete control of the defense of such suit, including the right to defend, settle and make changes in the product for the purpose of avoiding infringement.  If in any suit covered by this provision the use of products is enjoined, Seller shall at its sole cost and expense either (I) procure for Buyer the right to continue using products, (ii) replace products with non-infringing products, (iii) modify the products to be non-infringing, or (iv) remove products and refund to Buyer the purchase price, transportation and installation costs thereof.  Seller shall have no liability with respect to patent rights of countries other than the United States.  The foregoing shall be Seller's sole and entire liability and Buyer's sole remedy for patent infringement by products.

(b) Buyer agrees to indemnify and hold harmless Seller from and against any alleged patent infringement resulting from Seller's compliance with designs and/or specifications furnished by Buyer or with specific written instructions given by Buyer for the purpose of directing the manner in which Seller shall perform this Agreement.

## 10. CONTRACT PERFORMANCE, INSPECTION AND ACCEPTANCE

(a) All products or services shall be finally inspected and accepted by Buyer within fourteen (14) days after delivery or performance as applicable. Buyer shall make all claims (including claims for shortages), excepting only those provided for under the WARRANTY and PATENTS sections herein, in writing within said fourteen (14) day period or they are waived. There shall be no revocation of acceptance. Rejection may be only for defects substantially impairing the value of products or services and Buyer's remedy for lesser defects shall be in accordance with the WARRANTY section herein.

(b) If Buyer wrongfully rejects or revokes acceptance of items tendered under this agreement, or fails to make a payment due on or before delivery, or repudiates this agreement, Seller shall, at its option, have a right to recover as damages either the price as stated herein (upon recovery of the price the items involved shall become the property of Buyer) or the profit (including reasonable overhead) which the Seller would have made from full performance, together with reasonable costs and expenses incurred.

(c) Seller shall not be responsible for nonperformance or delay in performance occasioned by any causes beyond Seller's reasonable control, including, but not limited to, labor difficulties, delays of vendors or carriers, fires or governmental actions, material shortages or other similar or force majeure occurrences.

(d) Unless otherwise agreed by Seller in writing, orders are noncancelable. If Seller agrees to cancellation of an order it may impose a restocking charge.

## 11. SPECIAL TOOLING AND DESIGN CHANGES

(a) Notwithstanding any tool, die or pattern charges or amortization in connection therewith, all special tooling and related items shall be and remain the property of Seller. Special products and parts made to special specifications may not be cancelled or returned without Seller's written consent and upon terms established at Seller's discretion.

(b) Seller reserves the right to change or modify the design of any product without obligation to furnish or install such changes or modifications on products previously or subsequently sold.

(c) Seller reserves the right to discontinue the manufacture of any product, or to change or modify the design specifications and construction of any of its product at any time without incurring any liability to Buyer.

## 12. MISCELLANEOUS

(a) Delivery dates are estimates only and are subject to change upon notice from Seller.

(b) THIS AGREEMENT AND ALL QUESTIONS ARISING HEREUNDER OR IN CONNECTION WITH A QUOTATION OR ANY ORDER SUBMITTED IN CONNECTION HEREWITH SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF TEXAS, WITHOUT REGARD TO THE CONFLICT OF LAWS RULES OF TEXAS.

(c) Seller shall be entitled to recover its reasonable costs, including attorneys' fees, incurred in enforcing and/or defending its rights under this agreement.

(d) A holding that any term or condition hereof is void or unenforceable shall not render void or unenforceable any other terms or conditions of this agreement.

(e) If any sale hereunder is other than ex-works Seller's plant, this agreement is based upon the freight and administrative charges in effect at the time Seller delivers this agreement to Buyer. In the event of any increase or decrease in applicable freight charges before the products are shipped, such change in freight will be for the Buyer's account. Volume discount after shipping is for Seller's account. If Seller experiences any material price increases from its vendors prior to shipment, Seller may pass the actual price increase through to Buyer.

(f) Any proceeding or action by Buyer arising hereunder or relating hereto, whether based on breach of contract, tort (including negligence and strict liability) or other theories, must be commenced within two (2) years after the cause of action accrues or it shall be barred.

(g) Buyer hereby warrants and represents that Buyer has knowledge and experience in financial and business matters that enable Buyer to evaluate the merits and risks of a transaction and that Buyer is not in a significantly disparate bargaining position and, to the maximum extent legally permissible, Buyer hereby waives the provisions of the Texas Deceptive Trade Practices-Consumer Protection Act and any like or successor statute.

(h) Any proposed terms or conditions contrary to U.S. laws, rules and regulations are expressly rejected and will not apply to this transaction. Buyer shall not do anything that would cause Seller to be in breach of applicable laws, rules and regulations, and shall protect, indemnify and hold harmless Seller from any fines, damages, costs, losses, liabilities, penalties and expenses incurred by Seller as a result of the errors, mistakes, failures or omissions of Buyer to comply with this theses General Terms of Sale. Buyer acknowledges that the product is subject to U.S. export control laws, rules and regulations. Buyer shall comply with all applicable export control, anti-boycott and trade embargo laws, rules and regulations, including but not limited to the U.S. Export Administration Regulations, and shall not resell, export, re-export , distribute, transfer or dispose, of products, directly or indirectly, without first obtaining all necessary written consents, permits and authorizations and completing such formalities as may be required by any such laws, rules and regulations, Export of goods covered hereby is subject to U.S. Government control. Failure by Buyer to comply with such laws, rules and regulation shall constitute a material breach of these General Terms of Sale. Seller assumes no responsibility or liability for Buyer's failure to obtain required authorizations, Buyer agree to impose this same compliance requirement in is contracts with third parties pertaining to the product.

## 13. **BINDING ARBITRATION**

(a) Buyer and Seller shall attempt, in good faith, to resolve any dispute arising out of or relating to this agreement, or the products and/or services provided hereunder, promptly by negotiation between executives. If the matter has not been resolved within sixty (60) days of a party's request for negotiation, either party may initiate arbitration as hereinafter provided.

(b) Any dispute arising out of or related to this agreement or the products and/or services provided hereunder which has not been resolved by the negotiation procedure described above, shall be settled by binding arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules and

judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

(c) Unless Buyer and Seller otherwise agree in writing, the arbitration panel shall consist of three arbitrators.  The arbitrator(s) shall have no authority to award punitive or other damages not measured by the prevailing party's actual damages and may not, in any event, make any ruling, finding or award that does not conform to the terms and conditions of this agreement.

(d) The arbitration proceeding shall be conducted in English, in Dallas, Texas.

## 14. LOSS OF WELL/POLLUTION

BUYER SHALL DEFEND, INDEMNIFY AND SAVE HARMLESS SELLER FROM AND AGAINST ANY AND ALL LOSS, DAMAGE, INJURY, LIABILITY AND COST BROUGHT BY OR ON BEHALF OF ANY PERSON FOR DAMAGE TO OR LOSS OF WELL OR FLUIDS ESCAPING THEREFROM, RESERVOIR OR SUBSURFACE DAMAGE, SURFACE DAMAGE RESULTING FROM SUBSURFACE DAMAGE OR BLOWOUT, OR POLLUTION OR CONTAMINATION OR THE CONTROL AND REMOVAL THEREOF, OR ANY ENVIRONMENTAL HAZARD OR CONDITION (INCLUDING ANY DAMAGE TO GROUNDWATER, AQUIFERS, SURFACE WATER, SURFACE SOIL, AND SUBSURFACE SOIL), WHETHER THE SAME IS CAUSED OR CONTRIBUTED TO BY THE NEGLIGENCE OF, BREACH OF WARRANTY BY, STRICT LIABILITY OF, OR AN OBLIGATION OR INDEMNITY OF SELLER, ITS AGENTS OR EMPLOYEES.  THE PROVISIONS OF THIS SECTION SHALL SURVIVE TERMINATION, CANCELLATION OR EXPIRATION OF THIS AGREEMENT OR ANY ORDER ISSUED PURSUANT HERETO.

M-38 7/2004

| WAUKESHA ENGINE, DRESSER, INC. | DISTRIBUTOR<br>Interstate Power Systems |
|---|---|
| By: _L.S. Beauchamp_ | By: _____ |
| Title: Vice President - Sales | Title: _PRESIDENT_ |
| DATE: 5-15-07 | |

*APPROVED BY OCK LEGAL*

**EXHIBIT F**
**COMMISSIONS**

On all sales of Waukesha Products for which a commission shall become due Distributor under this Agreement, the following commissions shall be paid:

TOTAL COMMISSION

1. Sale of all Waukesha Products, (except as limited below) ...............................

2. Sale of spare parts for Waukesha Products....................................

3. Sale of Waukesha Products to WAUKESHA-designated OEM....................

4. Sale of Waukesha Products to DOEM .......

5. Sale of ATGL Products ..............................

**CONFIDENTIAL INFORMATION**

**REDACTED**

WAUKESHA ENGINE, DRESSER, INC.

By: _L. Beauchamp_

L.S. Beauchamp

Title: _Vice President - Sales_

[APPROVED BY_OSIL LEGAL]

DATE: _5-15-07_

DISTRIBUTOR
Interstate Power Systems

By: _____

Title: _PRESIDENT_

## EXHIBIT G
## CODE OF CONDUCT

### Code of Business Conduct for International Business Relationships

Dresser, Inc. ("DRESSER") is a global company that conducts business in many countries through subsidiaries, branches, joint ventures and other business arrangements. DRESSER also uses agents to represent it in situations where an agent can facilitate accomplishment of business objectives.

As a responsible corporate citizen, DRESSER requires that all of its business operations observe certain basic standards of conduct. Also, as a public company subject to the Laws of the United States, DRESSER must ensure that its business relationships outside the United States will comply with the requirements of certain United States Laws that impose on DRESSER standards of conduct for its business throughout the world.

For International Business Relationships, it is the policy of DRESSER that the following standards of conduct and legal requirements shall be observed:

1. Applicable Law must be complied with in the conduct of such relationships. If there is a conflict between applicable local Law and applicable United States Law, the guidance of DRESSER's Law Department will be sought in order to resolve such conflict. However, the United States Laws referred to in paragraphs 4 and 5 below, must be complied without exception.

2. All dealings involving International Business Relationships will be conducted in a fair manner with honesty and integrity, observing high standards of personal and business ethics.

3. Business books and records will be maintained in a proper, responsible and honest manner which will allow DRESSER to comply with applicable Laws.

4. International Business Relationships will be conducted in compliance with the United States Foreign Corrupt Practices Act. Distributor will not, directly or indirectly, give, offer or promise to give any money or other thing of value to any governmental official, political party or official, or candidate for such offices, for the purpose of influencing any act or decision of such person, in an official capacity, in order to obtain or retain business related to this Agreement.

5. International Business Relationships will be conducted in compliance with the Laws of the United States regarding boycotts. International Business Relationships will be conducted in compliance with the Laws of the United States regarding trade sanctions and export administration.

6. Confidential or proprietary information will not be disclosed at any time to persons outside the International Business Relationship without proper written authorization.

7. The International Business Relationship will be conducted in compliance with applicable antitrust and competition Laws.

WAUKESHA ENGINE, DRESSER, INC.

By: _L.S. Beauchamp_

     L.S. Beauchamp

Title: Vice President - Sales

DATE: 5-15-07

DISTRIBUTOR
Interstate Power Systems

By: _____

Title: PRESIDENT

# Exhibit C

**Thursday, August 11, 2011 8:10:26 AM Pacific Daylight Time**

**Subject:** FW: WEDA459: Channel Agreements Status & Certified Overhaul Program Update
**Date:** Tuesday, September 21, 2010 6:44:00 AM Pacific Daylight Time
**From:** Val Jensen
**To:** Mike Lee

Thank You,

Val Jensen
Waukesha Product Manager
Valley Power Systems, Inc.
Authorized Distributor for **DRESSER** *WAUKESHA*
Arizona, California & Nevada
(661) 345-7380 Cell
(661) 664-8494 Fax
val.jensen@valleypsi.com
mrjensen@sbcglobal.net

---

**From:** Dresser Waukesha [marketing.department@dresser.com]
**Sent:** Tuesday, July 20, 2010 7:52 AM
**To:** Val Jensen
**Subject:** WEDA459: Channel Agreements Status & Certified Overhaul Program Update



**Waukesha**       **Waukesha Advisor**

WEDA 459
July 20, 2010

## Channel Agreements Status & Certified Overhaul Program Update

**Channel Agreements –** Dresser Waukesha is in the process of finalizing new standard versions of our various channel agreements and updating the corresponding policy manuals. Concurrently, we are reviewing structural issues with the existing channels that we support. As a result, we will not be renewing any channel agreements at this time. We will continue to operate under existing channel agreements or, if a channel agreement has expired, the terms, conditions and limitations set forth in such channel agreement(s) will continue on a month by month basis as if the prior contract had not expired. This arrangement will remain in effect until further notice.

**Certified Overhaul Program –** The current Certified Overhaul program for engines and components has been a valuable tool for both participating Dresser Waukesha Distributors and their customers. Any Distributor shop that is currently certified is encouraged to continue utilizing the program.

The Certified Overhaul program is going through a revision in order to bring a more balanced value for all parties. This revision will include technical updates that will better align procedures and guidelines with appropriate current practices. In light of this revision, no new shop certifications will be awarded until further notice.

If you have any questions or comments, please feel free to contact myself or Joe Lange, Manager, Channel Operations, joe.lange@dresser.com, 262.549.2908.

Best Regards,
Patty Bianco
Vice President, Commercial Operations
patricia.bianco@dresser.com
262.549.2978

© 2008 Dresser, Inc. Dresser Waukesha. All Rights Reserved. Click here to unsubscribe.

# Exhibit D



GE Energy
Gas Engines

1101 West St. Paul Avenue
Waukesha, WI 53188-4999
USA

T +1 262 547 3311
F +1 262 549 2795

VIA CERTIFIED COURIER
RETURN RECEIPT REQUESTED

Wednesday, August 10, 2011

Mr. Travis Penrod, CEO
Interstate Companies, Inc.
260 American Boulevard, East
Minneapolis, MN 55425

Subject: Notice of Termination of Distributor Agreement

Dear Travis:

As you know, Interstate Power Systems ("Interstate") and Dresser, Inc. - Dresser Waukesha ("Waukesha") entered into a Distributor Agreement ("Agreement") on December 15, 2006 for a three (3) year term that expired on December 14, 2009. We have continued our relationship under the terms of the Agreement on a month-to-month basis pending integration activities currently underway with the acquisition by GE.

This letter is the official written notice of termination pursuant to Article XII of the Agreement. Ninety-three (93) days from the date of this notice, i.e. at midnight CST on Thursday, November 10, 2011, the Agreement along with any and all extensions of such Agreement or related contract (oral and/or written, expressed and/or implied) between Interstate and Waukesha, shall terminate. .

Pursuant to Article 1, Section H of the Agreement, effective immediately, Waukesha is appointing a second distributor in the non-exclusive territory detailed in Schedule B of the Agreement.

Pursuant to Article 1, Section D of the Agreement, effective immediately and applicable to all unit and parts orders, Waukesha is eliminating all discounts provided in Exhibit D and discontinuing the "stock order discount" program discount.

Pursuant to Article IX, Section A of the Agreement, please provide all records pertaining to any sale made by Interstate during the last ten (10) years. This information should be set forth in an Excel spreadsheet and contain all relevant information described in this Section. Within five (5) days of the date of this letter, please electronically submit to Joe Lange, Manager, Channel Operations at joseph.lange@ge.com, a proposed template that depicts the required data fields to be completed. Once the template is approved by Waukesha, Interstate has thirty (30) days to populate the template and submit the completed Excel spreadsheet to Joe Lange.

Pursuant to Article XII, Section B, Paragraph 2, Waukesha requests that copies of all active maintenance, service, repair, and operations contracts be sent to Joe Lange for review.

Dresser, Inc.



GE Energy
Gas Engines

1101 West St. Paul Avenue
Waukesha, WI 53188-4999
USA

T +1 262 547 3311
F +1 262 549 2795

In light of this termination notice, effective immediately, Interstate will be limited to utilizing two (2) order types for parts orders placed on Waukesha – emergency and customer.  Stock and forecast orders will not be accepted.  Additionally, Interstate will not be eligible to participate in the 2011 Annual Return Program.

Please refer to the Agreement to ensure that all other post-termination obligations are met by Interstate.

Regards,

Patricia M. Bianco
Global Channel Director
GE Gas Engines

Cc:     Ms. Cynthia Boeh, Sr. Legal Counsel, Waukesha
        Mr. Brian White, President, Waukesha gas engines
        Mr. Lloyd Beauchamp, VP Gas Compression Sales
        Mr. Robert Hutchinson, VP Aftermarket