UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Interstate Power Systems, Inc.,    Civil No. 11-2564 (DWF/JSM)

         Plaintiff,

v.    **MEMORANDUM OPINION AND ORDER**

General Electric Company,
d/b/a GE Energy,

         Defendant.

_____

Lee A. Henderson, Esq., Hessian & McKasy, PA, counsel for Plaintiff.

Mary P. Fritz, Esq., Ronn B. Kreps, Esq., and Sparrowleaf Dilts McGregor, Esq., Fulbright & Jaworski LLP, counsel for Defendant.

_____

## INTRODUCTION

This matter is before the Court on Plaintiff's Motion for Preliminary Injunction (Doc. No. [4]). For the reasons set forth below, the Court grants Plaintiff's motion in part by restoring Plaintiff's discount pricing privileges in an effort to maintain the status quo pending arbitration proceedings, but also refers the matter to arbitration and stays the action accordingly.

## BACKGROUND

Plaintiff Interstate Power Systems ("IPS") is a Minnesota corporation that has been in the industrial distribution business since 1957 and has been a North American distributor for Waukesha Motor Company ("Waukesha") since 1989. (Doc. No. 7,

Caswell Aff. ¶ 3.) In 1974, Dresser Industries, Inc. ("Dresser") purchased Waukesha. (*Id.* ¶ 5.) Dresser then continued to operate Waukesha until February 1, 2011, when Defendant General Electric Company ("GE") purchased Dresser. (*Id.*) Beginning in February 2011, GE has served as the manufacturer of Waukesha products. (*Id.*) Companies purchase Waukesha engines for use in various industrial and utility applications, primarily for use in generators and industrial compressors. (*Id.* ¶ 7.) Until its termination, IPS distributed Waukesha products throughout the north central United States, with sales of Waukesha products, parts, and services that grew from $1 million annually in 1999 to $4 million in 2010. (*Id.* ¶ 9.)

The Waukesha distribution system has in the past generally included approximately eight to ten distributors covering sales territory across the entire continental United States. (*Id.* ¶ 11.) Waukesha's relationship with its distributors was governed by a uniform Distribution, Service and Commission Agreement ("Distribution Agreement"), which was provided to Waukesha distributors on a non-negotiable basis. (*Id.* ¶ 12.) This agreement required that IPS and other distributors: (a) invest substantial sums of money to maintain an inventory of replacement parts with facilities subject to the approval of Waukesha; (b) maintain suitable service facilities; (c) employ a sufficient number of competent service personnel; (d) spend their own money training their employees; and (e) refrain from selling any competing products. (*Id.* ¶ 13 and Ex. C ("Distribution Agreement") at 2–5.) IPS signed the Distribution Agreement at issue in December 2006. (Distribution Agreement at 13.) It was to remain in effect for three years, unless earlier terminated. (*Id.*)

The Distribution Agreement, by its terms, expired in 2009. (*Id.*) In late 2009, Dresser advised its distributors that it was "exploring structural changes to its business including a potential sale," and advised the distributors that it would not issue updated agreements at that time, but that their business relationships would continue. (Caswell Aff. ¶ 16.) On July 20, 2010, Dresser issued an e-mail notice to its distributors stating that Dresser would not be renewing any channel agreements, and that it would continue to operate under existing channel agreements. (Caswell Aff., Ex. D ("Channel Agreements Status & Certified Overall Program Update").) If an existing channel agreement had expired, the terms of that agreement would continue on a month to month basis as if the prior contract had not expired. (*Id.*) This arrangement was to continue until further notice. (*Id.*) In October 2010, Dresser announced that GE had agreed to purchase Dresser in a $3 billion deal. (Caswell Aff. ¶ 18.) GE closed this transaction on February 1, 2011 and assumed control of Dresser on that date. (*Id.* ¶ 19.)

On August 10, 2011, Patricia Bianco, Global Channel Director, GE Gas Engines, hand-delivered a termination letter to IPS in Bloomington, Minnesota. (*Id.* ¶ 20.) This letter provided that on November 10, 2011, ninety-three days after the delivery of the letter, the Distribution Agreement and all extensions of the Agreement between IPS and Waukesha would terminate. (Caswell Aff., Ex. E ("Termination Letter from Defendant GE").) Effective immediately on August 10, 2011, however, Waukesha appointed a second distributor in IPS's territory, eliminated all discounts provided in the Distribution Agreement, and discontinued the "stock order discount" program previously in place. (*Id.*) As a result of the termination letter, IPS was immediately limited to placing only

3

emergency and customer parts orders and was no longer permitted to place stock or forecast orders.  (*Id.*)  Shortly thereafter, Waukesha announced that it would have only two North American distributors, Gas Drive and Waukesha-Pierce Industries ("WPI").  (Caswell Aff. ¶ 23.)  These two distributors were chosen from among the eight existing Waukesha distributors.  (*Id.*)

IPS contends that GE's termination of IPS's distributorship was statutorily defective under the Minnesota Heavy and Utility Equipment Manufacturers and Dealers Act ("HUEMDA"), Minn. Stat. §§ 325E.068–0684,  and that the termination lacked good cause, rendering the termination void and unenforceable.[1]  IPS argues that a preliminary injunction is necessary to prevent irreparable harm, given its twenty-two year distributorship relationship with Waukesha and the client relationships, revenue, and goodwill that IPS will lose if it no longer distributes Waukesha products.  (Caswell Aff. ¶¶ 29–31.)  GE counters that all controversies regarding the Distribution Agreement are subject to a valid and binding arbitration clause contained in the Distribution Agreement, and that, therefore, IPS's motion for preliminary injunction should be denied and this

---

[1]  Specifically, HUEMDA provides that "[n]o equipment manufacturer . . . may terminate, cancel, fail to renew, or substantially change the competitive circumstances of a dealership agreement without good cause," and that an equipment manufacturer must provide an equipment dealer at least 90 days prior written notice of termination of the dealership agreement, with an opportunity to cure the claimed deficiency and void the termination within that notice period.  Minn. Stat. § 325E.0681, subds. 1 and 2.  GE claims it had good cause to terminate the relationship and that "discovery will allow further development of" that cause.  (Doc. No. 19 at 11.)  On October 11, 2011, the day before the parties appeared before the Court to argue this motion, GE sent a letter to IPS promising that a revised notice of termination would be forthcoming that "fully articulate[s] cause for termination."  (Doc. No. 25, Ex. A.)  As far as the Court is aware, IPS has not received an amended notice of termination.

4

case must be dismissed or stayed and referred to arbitration. (*See* Distribution Agreement, Art. XIV, ¶ I ("Arbitration Clause") at 18.)[2]

This Court concludes that the arbitration clause contained in the Distribution Agreement applies to the parties' dispute and orders that IPS's claims be stayed pending arbitration. In the meantime, however, to prevent irreparable harm and to ensure that the arbitration proceedings are meaningful, the Court will preserve the status quo by requiring that IPS retain discount pricing privileges given to Waukesha distributors pending arbitration. *See* Minn. Stat. § 572B.08(a).

## DISCUSSION

### I. Agreement to Arbitrate

In determining whether to compel arbitration, the Court must determine whether: "(1) a valid agreement to arbitrate exists between the parties; and (2) the specific dispute is within the scope of that agreement." *Airtel Wireless v. Montana Electronics Co., Inc.*, 393 F. Supp. 2d 777, 786 (D. Minn. 2005) (citing *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868 (8th Cir. 2004)). In this case, a valid agreement to arbitrate exists, and the immediate dispute is within the scope of that agreement. Congress enacted the Federal

---

[2] The Distribution Agreement executed by the parties in 2006 provides that the Agreement will "at all times, including those at expiration or termination hereof, be governed by and construed only under the laws of the State of Texas." (Distribution Agreement at 17.) However, HUEMDA provides that a choice of law provision in a dealership agreement that is inconsistent with the terms of Minn. Stat. §§ 325E.068-0684, or that purports to waive an equipment manufacturer's compliance with the same, is void and does not waive any rights provided under HUEMDA. Minn. Stat. §§ 325E.0683. Here, GE may not evade Minnesota dealership statutes using a choice of law provision. Accordingly, because IPS, as a party to the Distribution Agreement, is a Minnesota corporation, the Court applies Minnesota law to the present motion.

Arbitration Act ("FAA") to declare "a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008).  Agreements to arbitrate in contracts "involving commerce" are "valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

The Distribution Agreement signed by the parties contains an agreement to arbitrate "any controversy arising under or in relation to this agreement."  (Distribution Agreement, Art. XIV ¶ I.)[3]  The parties dispute the validity and conditions of IPS's termination as a Waukesha distributor and IPS's rights to retain discount pricing privileges under the Distribution Agreement.  The terms of a valid termination of the distributorship relationship are outlined in the Distribution Agreement under "Term and Termination" (Distribution Agreement, Art. XII at 13); therefore, this dispute does "arise under" and relate to the Distribution Agreement.

The Court has noted, and the parties have addressed in letter briefs to the Court, the inclusion of an unusual clause in this agreement to arbitrate that provides that "nothing herein shall be construed to deny Waukesha the right to seek an injunction in any court of competent jurisdiction."  (*Id.*)  Other courts have held that similar clauses, which preserve the drafting party's right to bring claims in federal or state court while forcing the non-drafting party (such as a franchisee) to submit all claims to binding

---

[3]   Substantially similar language also exists in the agreement's General Terms of Sale, requiring the parties to submit to binding arbitration "any dispute arising out of or relating to this agreement, or the products and/or services provided hereunder" that cannot be resolved by negotiation between executives. (Distribution Agreement at 28-29.)

6

arbitration, are unconscionable and thus unenforceable as contracts of adhesion. *See, e.g.*, *Ticknor v. Choice Hotels Intern., Inc.*, 265 F.3d 931 (9th Cir. 2001). Although the provision granting Waukesha the right to seek injunctive relief in court makes the parties' arbitration agreement arguably one-sided, the Court declines to rule that the presence of this clause renders the entire arbitration agreement unconscionable and therefore unenforceable. This is not a situation in which one contracting party possessed significantly greater power or sophistication than the other, making such a clause unconscionable in light of the imbalance in bargaining power. Rather, both IPS and Waukesha are companies with revenues in the millions of dollars, and both are capable of retaining experienced legal counsel in order to draft and negotiate distribution agreements. Accordingly, the Court will refer the matter to arbitration as provided by the parties in the Distribution Agreement and stay these proceedings.

**II.     Preliminary Injunction**

IPS urges the Court to enter a preliminary injunction barring GE from terminating the Distribution Agreement, restoring to IPS all rights and privileges as a distributor (including the right to buy products and parts at distributor discounts) and barring Waukesha from appointing any other distributors in IPS's existing territory pending a final judgment in this case.

Due to the existence of a valid arbitration agreement, the Court will stay these proceedings and refer the case to arbitration as set forth in the Distribution Agreement between the parties. Notwithstanding the presence of a valid and binding arbitration

7

agreement, the Court may craft a provisional remedy to accompany the stay that will ensure that arbitration is meaningful and effective:

> Before an arbitrator is appointed and is authorized and able to act, the court, upon motion of a party to an arbitration proceeding and for good cause shown, may enter an order for provisional remedies to protect the effectiveness of the arbitration proceeding to the same extent and under the same conditions as if the controversy were the subject of a civil action.

Minn. Stat. § 572B.08(a). In order to ensure the effectiveness of the arbitration proceedings in this case, which could take place months from now, the Court will grant IPS's motion for preliminary injunction in part by restoring to IPS its right to buy products at distributor discounts.

In its termination letter to IPS, GE indicated that IPS's distributorship with Waukesha would cease after ninety-three days. (Caswell Aff., Ex. E ("Termination Letter from Defendant GE").) This notice period is drawn from Article XII of the Distribution Agreement ("Term and Termination"), which provides that the Distribution Agreement "may be terminated at any time during the initial term and during any renewal term by either party upon giving the other party not less than ninety-three (93) days written notice of termination." (Distribution Agreement at 13.) While the ninety-three day notice period complies on its face with the Distribution Agreement, IPS's inability to place stock or forecast orders rendered it virtually unable to conduct any Waukesha-related business beginning on August 10, 2011. In addition, because IPS has dedicated itself to the Waukesha market for the past twenty-two years, and by contract has been precluded from selling any competing products, IPS does not have an alternative product source from which to replace its lost business. (Supplemental Aff. of Jeffrey

8

Caswell at 7.) Based on these particular circumstances, regardless of the ninety-three day notice period included in the August 10, 2011 termination letter, GE's discontinuation of discount pricing privileges for IPS effectively constitutes an immediate termination of the Distribution Agreement.

The Court has also considered the factors enumerated in *Dataphase Sys., Inc. v. C L Sys., Inc.*, and finds that they further support injunctive relief on these facts. In order to succeed in obtaining a preliminary injunction, the movant must demonstrate: (1) a likelihood of success on the merits; (2) that the movant will suffer irreparable harm absent injunctive relief; (3) that the balance of harms favors the movant; and (4) that the public interest favors the movant. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). Requiring IPS to await arbitration proceedings while it is unable to order Waukesha products at a discount rate would cause irreparable harm to IPS, and would substantially change its competitive circumstances. S*ee* Minn. Stat. § 325E.0681, subd. 1 ("No equipment manufacturer . . . may terminate, cancel, fail to renew, or substantially change the competitive circumstances of a dealership agreement without good cause."). Also, because Minnesota law applies, and considering Minn. Stat. § 325E.0681, which prohibits termination of a distribution agreement without cause and without notice, IPS is likely to succeed on the merits. In addition, significant public policy concerns exist in this situation: allowing a discount pricing program to be suspended pending arbitration would permit manufacturers to effectively evade statutory protections for distributors by eliminating the security of a notice period. Because IPS is likely to succeed on the merits of its case, because irreparable harm is likely to befall IPS

if discount pricing privileges are not preserved pending arbitration, and because public policy favors a true notice period before termination of a distributorship agreement, the Court grants IPS's motion for preliminary injunction to the limited extent it seeks to maintain the pricing discounts in place before it received the August 10, 2011 termination letter from GE.[4]

## ORDER

Based upon the files, records, and proceedings herein, and for the reasons set forth above, **IT IS HEREBY ORDERED** that:

1. This matter is referred to arbitration as set forth in the parties' Distribution Agreement.

2. This proceeding will be stayed pending arbitration of the parties' claims.

3. IPS's Motion for Preliminary Injunction (Doc. No. [4]) is **GRANTED IN PART** as follows:

    a. To the extent IPS seeks an order restraining and enjoining GE from terminating the distribution agreement between IPS and Waukesha, the motion is **DENIED**, and the matter is referred to arbitration.

    b. To the extent IPS seeks an order restoring its rights and privileges as a distributor, specifically the right to buy products and parts at

---

[4] The Court declines to grant the additional relief requested by IPS because the Distribution Agreement did not contemplate an exclusive distributorship. (*See* Distribution Agreement at 17 ("Waukesha reserves the right to appoint other Distributors in the Territory if Waukesha determines that demand, market, service, or distribution conditions in the Territory justify such further appointments."))

the same distributor discounts provided to active distributors, the motion is **GRANTED** pending arbitration.

   c.  To the extent IPS seeks an order barring Waukesha from appointing any other distributors in IPS's existing territory pending a final judgment in this case, the motion is **DENIED** and the matter is referred to arbitration.

   4.  IPS shall post a bond in the amount of $250,000 before 5 P.M. on October 28, 2011, but the Court's requirement that a bond be posted shall not delay any other relief awarded by this order.


Dated:  October 21, 2011      <u>s/Donovan W. Frank</u>
                DONOVAN W. FRANK
                United States District Judge